RECORD NO. 12-2272

In The

# United States Court of Appeals

### For The Fourth Circuit

## COLON HEALTH CENTERS OF AMERICA, LLC; WASHINGTON IMAGING ASSOCIATES-MARYLAND, LLC, d/b/a Progressive Radiology,

*Plaintiffs – Appellants*,

v.

## BILL HAZEL, in his official capacity as Secretary of Health and Human Resources; BRUCE EDWARDS, in his official capacity as Chairman of the Virginia State Board of Health; PAUL CLEMENTS, in his official capacity as member of the Virginia State Board of Health; KAY R. CURLING, in her official capacity as member of the Virginia State Board of Health; ERIC DEATON, in his official capacity as member of the Virginia State Board of Health; JOHN DETRIQUET, in his official capacity as member of the Virginia State Board of Health; JAMES E. EDMONDSON, JR., in his official capacity as member of the Virginia State Board of Health; STEVEN R. ESCOBAR, in his official capacity as member of the Virginia State Board of Health; H. ANNA JENG, in her official capacity as member of the Virginia State Board of Health; CHARLES K. JOHNSON, in his official capacity as member of the Virginia State Board of Health; BENNIE MARSHALL, in his official capacity as member of the Virginia State Board of Health; MARY MCCLUSKEY, in her official capacity as member of the Virginia State Board of Health; M. CATHERINE SLUSHER, in her official capacity as member of the Virginia State Board of Health; GAIL TAYLOR, in her official capacity as member of the Virginia State Board of Health; AMY VEST, in her official capacity as member of the Virginia State Board of Health; ERIC O. BODIN, in his official capacity as Acting Director of the Office of Licensure and Certification and Director of the Division of Certificate of Public Need; MAUREEN DEMPSEY, in her official capacity as State Health Commissioner; JOHN W. SEEDS, in his official capacity as member of the Virginia State Board of Health,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

———————————

## BRIEF OF APPELLANTS

———————————

Robert J. McNamara
William H. Mellor
Lawrence Salzman
Darpana M. Sheth
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2272__     Caption: __Colon Health Centers v. Hazel__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Colon Health Centers of America, LLC__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Robert J. McNamara_____    Date: ___October 25, 2012___

Counsel for: _Appellants_____

## CERTIFICATE OF SERVICE
****************************

I certify that on ___October 25, 2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_/s/ Robert J. McNamara_____                    ___October 25, 2012___
(signature)                                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2272__    Caption: __Colon Health Centers v. Hazel__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Washington Imaging Associates -- Maryland, LLC, d/b/a Progressive Radiology__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
    (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Robert J. McNamara                    Date:    October 25, 2012

Counsel for:  Appellants

## CERTIFICATE OF SERVICE
****************************

I certify that on    October 25, 2012    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Robert J. McNamara                           October 25, 2012
        (signature)                                    (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ...............................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE...................................................................2

STATEMENT OF THE FACTS ...............................................................4

    I.     VIRGINIA'S CERTIFICATE-OF-NEED PROGRAM PREVENTS
         PLAINTIFFS FROM PROVIDING INNOVATIVE AND COST-EFFECTIVE
         MEDICAL SERVICES IN VIRGINIA ...........................................5

         A.    Colon Health Centers Is Blocked from Offering
              Virginians Life-Saving Cancer Screening and Treatment..........5

         B.    Progressive Radiology Is Prevented from Offering
              Specialized, Cost-Effective Diagnostic Imaging to
              Patients in Virginia ...................................................8

    II.    VIRGINIA'S CERTIFICATE-OF-NEED PROGRAM IMPOSES HUGE
         BURDENS AND ACHIEVES NOTHING BEYOND SHEER ECONOMIC
         PROTECTIONISM .....................................................................9

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ..........................................................................................15

    Standard of Review..........................................................................15

    I.     THE DISTRICT COURT'S OPINION FAILS TO PROPERLY APPLY
         RULE 12(B)(6)'S PLAUSIBILITY STANDARD.........................15

II.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' CLAIM
       UNDER THE DORMANT COMMERCE CLAUSE .........................................20

       A.    The District Court Misapplied the *Pike* Balancing Test to
             Plaintiffs' Claim That Virginia's Certificate-of-Need
             Program Unduly Burdens Interstate Commerce......................22

             1.    The district court incorrectly focused on the
                   burden on Plaintiffs rather than the burden on
                   interstate commerce .........................................................23

             2.    The district court failed to analyze whether there
                   were any local benefits under *Pike* .................................26

       B.    The District Court Incorrectly Rejected the Complaint's
             Allegations of Discrimination against Interstate
             Commerce ..........................................................................28

             1.    The district court failed to even consider many of
                   the Complaint's allegations of discrimination...............29

             2.    The district court improperly drew inferences in
                   favor of the moving party .................................................33

III.   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS'
       RATIONAL-BASIS CLAIMS UNDER THE FOURTEENTH
       AMENDMENT AS IMPLAUSIBLE .............................................................36

       A.    Just Like Dormant Commerce Claims, Facts Matter in
             Rational-Basis Cases...................................................................37

       B.    In Dismissing Plaintiffs' Equal Protection Claim, the
             District Court Erred by Failing to Accept Plaintiffs'
             Factual Allegations as True and Crediting Facts Asserted
             by the State ..................................................................................39

       C.    The District Court Similarly Erred in Dismissing
             Plaintiffs' Claim Under the Due Process Clause .....................44

1.    The Complaint sufficiently alleges that there is no logical connection between restricting the supply of medical facilities and increasing access to care or decreasing medical cost ...............................................45

2.    The Complaint sufficiently alleges that the public harm imposed by Virginia's certificate-of-need program vastly outweighs any plausible public benefit ............................................................................48

3.    The Complaint sufficiently alleges that Virginia's certificate-of-need program only achieves an illegitimate end:  economic protectionism ....................49

IV.    PLAINTIFFS PRESERVE THEIR PRIVILEGES OR IMMUNITIES CLAIM .......52

CONCLUSION .......................................................................................53

REQUEST FOR ORAL ARGUMENT ..................................................................53

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Anderson v. City of Bessemer City*,
    470 U.S. 564 (1985)......................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................16, 28, 32

*Barclays Bank PLC v. Franchise Tax Bd.*,
    512 U.S. 298 (1994)......................................................................20

*Belizan v. Hershon*,
    434 F.3d 579 (D.C. Cir. 2006)......................................................32

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................16, 20

*Bosiger v. U.S. Airways*,
    510 F.3d 442 (4th Cir. 2007) .......................................................34

*Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
    567 F.3d 79 (2d Cir. 2009) ..........................................................25

*Bright v. Westmoreland Cnty.*,
    380 F.3d 729 (3d Cir. 2004) ........................................................17

*Brown v. N.C. DMV*,
    166 F.3d 698 (4th Cir. 1999) .......................................................37

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
    476 U.S. 573 (1986)................................................................21, 22

*C & A Carbone, Inc. v. Town of Clarkstown*,
    511 U.S. 383 (1994).....................................................................35

*Chao v. Rivendell Woods, Inc.*,
    415 F.3d 342 (4th Cir. 2005) ........................................................15

*Chastleton Corp. v. Sinclair*,
    264 U.S. 543 (1924)......................................................................48

*Chicopee Mfg. Corp. v. Kendall Co.*,
    288 F.2d 719 (4th Cir. 1961) ........................................................17

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985)......................................................................40

*Craigmiles v. Giles*,
    312 F.3d 220 (6th Cir. 2002) ........................................................51

*De'lonta v. Johnson*, – F.3d – ,
    No. 11-7482,
    2013 WL 310350 (4th Cir. Jan. 28, 2013)....................................16

*Dep't of Rev. of Ky. v. Davis*,
    553 U.S. 328 (2008)......................................................................21

*Exxon Corp. v. Governor of Md.*,
    437 U.S. 117 (1978).......................................................................23

*FCC v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993)...............................................................39, 44

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996)......................................................32

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ..................................................36, 37

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000) ...........................................................42

*Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston*,
    660 F.3d 235 (5th Cir. 2011) ........................................................51

*Hadix v. Johnson*,
    230 F.3d 840 (6th Cir. 2000) .......................................................37

*Hooper v. Bernalillo Cnty. Assessor*,
    472 U.S. 612 (1985)...................................................................50

*J.J. Cassone Bakery, Inc. v. N.L.R.B.*,
    554 F.3d 1041 (D.C. Cir. 2009)...................................................17

*James v. Strange*,
    407 U.S. 128 (1972)...................................................................49

*Lawrence v. Texas*,
    539 U.S. 558 (2003)...................................................................50

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) .......................................................39

*Leary v. United States*,
    395 U.S. 6 (1969).......................................................................48

*Lindsey v. Normet*,
    405 U.S. 56 (1972).....................................................................49

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982)...................................................................37

*Maine v. Taylor*,
    477 U.S. 131 (1986)...................................................................21

*Mayer v. City of Chicago*,
    404 U.S. 189 (1971)...................................................................46

*McDonald v. Vill. of Winneteka*,
    371 F.3d 992 (7th Cir. 2004) .......................................................42

*Medigen of Ky., Inc. v. Public Service Comm'n*,
    985 F.2d 164 (4th Cir. 1993) ..........................................26, 27, 47

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) ..................................................................41, 51

*Metro. Life Ins. Co. v. Ward*,
    470 U.S. 869 (1985).................................................................................50

*Milnot Co. v. Richardson*,
    350 F. Supp. 221 (S.D. Ill. 1972) ..................................................................48

*Minnesota v. Clover Leaf Creamery Co.*,
    449 U.S. 456 (1981).................................................................................38

*Nashville, Chattanooga & St. Louis Ry. v. Walters*,
    294 U.S. 405 (1935).................................................................................48

*Nietzke v. Williams*,
    490 U.S. 319 (1989).................................................................................16

*Ostrzenski v. Seigel*,
    177 F.3d 245 (4th Cir. 1999) ....................................................................32

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970).........................................................................*passim*

*Plyler v. Doe*,
    457 U.S. 202 (1982).............................................................................48, 49

*Powers v. Harris*,
    379 F.3d 1208 (10th Cir. 2004) ..................................................................51

*Quinn v. Millsap*,
    491 U.S. 95 (1989).................................................................................46

*Reed v. Reed*,
    404 U.S. 71 (1971).................................................................................49

*Romer v. Evans*,
    517 U.S. 620 (1996).................................................................................50

*Selevan v. N.Y. Thruway Auth.*,
    584 F.3d 82 (2d Cir. 2009) ....................................................................24, 25

*Slaughter-House Cases*,
    83 U.S. 36 (1873)....................................................................................52

*St. Joseph Abbey v. Castille*,
    700 F.3d 154 (5th Cir. 2012) ......................................................37, 39, 43, 51

*Star Scientific, Inc. v. Beales*,
    278 F.3d 339 (4th Cir. 2002) ...........................................................18, 19, 20

*Turner v. Fouche*,
    396 U.S. 346 (1970)................................................................................46

*United States v. Carolene Prods. Co.*,
    304 U.S. 144 (1938)............................................................................38, 48

*U. S. Dep't of Agric. v. Moreno*,
    413 U.S. 528 (1973)............................................................................46, 50

*Walgreen Co. v. Rullan*,
    405 F.3d 50 (1st Cir. 2005)......................................................................32

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ...........................................................27, 29, 35

*Weinberger v. Wiesenfeld*,
    420 U.S. 636 (1975)................................................................................38

*Williams v. Vermont*,
    472 U.S. 14 (1985)..................................................................................45

*Willis v. Town of Marshall*,
    426 F.3d 251 (4th Cir. 2005) ...................................................................42

*WLR Foods, Inc. v. Tyson Foods, Inc.*,
    65 F.3d 1172 (4th Cir. 1995) ...................................................................35

*Wroblewski v. City of Washburn*,
    965 F.2d 452 (7th Cir. 1992) ........................................................36

*Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*,
    401 F.3d 560 (4th Cir. 2005) .................................................*passim*

*Zobel v. Williams*,
    457 U.S. 55 (1982).........................................................41, 46, 50

## **CONSTITUTIONAL PROVISION**

U.S. Const. amend. XIV ........................................................1, 12, 14, 15

U.S.  Const. art I, § 8, cl. 3 ...............................................................1

## **STATUTES**

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1331 ...........................................................................1

28 U.S.C. § 1343 ...........................................................................1

42 U.S.C. § 1983 ...........................................................................1

12 Va. Admin. Code §§ 5-220-10 *et seq.* .................................................3

12 Va. Admin. Code § 5-230-30(5) ......................................................30

Va. Code §§ 32.1-102.1 *et seq.*...........................................................3

Va. Code § 32.1-102.1 ...................................................................10

Va. Code § 32.1-102.3 ...................................................................41

Va. Code § 32.1-102.3(B)(5) ............................................................33

## **RULES**

Fed. R. Civ. P. 8 ................................................................................32

Fed. R. Civ. P. 12(b)(6)..................................................................*passim*

## **OTHER AUTHORITY**

Cass R. Sunstein, *Naked Preferences and the Constitution*,
    84 Colum. L. Rev. 1689 (1984).....................................................50

Wright and Miller,
    Federal Practice & Procedure, § 1356 (3d ed. 2012) ....................................16

## <u>STATEMENT OF SUBJECT MATTER AND</u>
## <u>APPELLATE JURISDICTION</u>

This appeal follows a final judgment by the district court granting Defendants-Appellees' motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief could be granted.

Plaintiffs Colon Health Centers of America, LLC ("Colon Health Centers") and Washington Imaging Associates–Maryland, LLC ("Progressive Radiology") brought this civil-rights lawsuit under 42 U.S.C. § 1983 for violations of their rights secured under the Commerce Clause (Article I, Section 8, cl. 3) and the Fourteenth Amendment to the United States Constitution. Accordingly, the district court properly exercised jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court's judgment, entered on September 14, 2012, is a final judgment that disposed of all the parties' claims.

Plaintiffs-Appellants timely filed a sufficient notice of appeal on October 11, 2012.

## STATEMENT OF THE ISSUES

1.    Did the district court err in dismissing Plaintiffs' claims under the dormant aspect of the Commerce Clause when it:

(a)    misconstrued the *Pike* balancing test to weigh the burden the challenged law imposed on Plaintiffs individually (as opposed to the burden on interstate commerce) against the purpose of the law (as opposed to its local benefits); and

(b)    disregarded the vast majority of the Complaint's allegations to reject Plaintiffs' claim that Virginia's certificate-of-need program discriminated against interstate commerce in purpose or effect?

2.    Did the district court err in dismissing Plaintiffs' Equal Protection and Due Process claims when it:

(a)    rejected the Complaint's factual allegations that Plaintiffs were similarly situated to others whom the law treats differently; and

(b)    conflated Rule 12(b)(6)'s plausibility standard with judging whether Plaintiffs met their evidentiary burden under the rational-basis test?

## STATEMENT OF THE CASE

This is an appeal from the district court's dismissal of Plaintiffs' Complaint challenging the constitutionality of a Virginia statute that makes it practically impossible for Plaintiffs to offer independent medical services in Virginia.

Virginia prohibits licensed medical professionals from providing certain medical services (or even purchasing certain equipment) unless they demonstrate a sufficient need for the proposed services. Demonstrating this need requires applicants to undertake a burdensome process amounting to full-blown litigation in

which existing in-state medical facilities are allowed to intervene in the application.

On June 5, 2012, Colon Health Centers and Progressive Radiology filed a complaint challenging the constitutionality of Virginia's Medical Care Facilities Certificate of Public Need, Va. Code §§ 32.1-102.1 *et seq.*, and its implementing rules and regulations, 12 Va. Admin. Code §§ 5-220-10 *et seq.* ("Virginia's certificate-of-need program").  Defendants-Appellees ("Virginia" or "State") are the state officials responsible for administering and enforcing Virginia's statutory scheme, and were sued in their official capacities.

Plaintiffs request declaratory and injunctive relief for violations of:  (i) the dormant aspect of the Commerce Clause (J.A. 42-45 at ¶¶ 190-211); (ii) the Equal Protection Clause of the Fourteenth Amendment (J.A. 45-46 at ¶¶ 212-19); (iii) the Due Process Clause of the Fourteenth Amendment (J.A. 46 at ¶¶ 220-26); and (iv) the Privileges or Immunities Clause of the Fourteenth Amendment (J.A. 46-47 at ¶¶ 227-31).

On June 29, 2012, Virginia filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (J.A. 5.)  Plaintiffs timely opposed Virginia's motion on July 13, 2012 and Virginia did not reply.  (J.A. 7.) The district court held oral argument on July 27, 2012.  (J.A. 105-22.)  On September 14, 2012, the district court granted Virginia's motion to dismiss in an

3

opinion that was a near-verbatim copy of Virginia's opening brief.  (J.A. 123-48.)
The district court's opinion failed to address any of the arguments raised by
Plaintiffs or the cases they cited in support.  On October 11, 2012, Plaintiffs filed a
timely appeal.  (J.A. 149-50.)

## STATEMENT OF THE FACTS

Plaintiffs, two out-of-state medical providers, want to offer the same
innovative and cost-effective medical services in Virginia that they already provide
in other states.  But Virginia's certificate-of-need program stands squarely in their
way.

Each of the two Plaintiffs wants to offer different medical services, but the
barriers they face are the same.  Specifically, Colon Health Centers plans to open
several Virginia centers combining the two prevailing methods of colon-cancer
screening and treatment in a "one-stop shop" just like it offers in Delaware and
New Jersey.  (J.A. 17 at ¶ 39.)  Progressive Radiology would like to open a
specialized medical-imaging center in Virginia that would allow its radiologists to
diagnose patients with orthopedic and neurological injuries, just as it currently
does in Maryland and the District of Columbia.  (*Id.*)

All of the medical services Plaintiffs propose are accepted medical practices
that would be offered by Virginia-licensed medical professionals.  (J.A. 17 at ¶ 41.)
But because Plaintiffs want to work for themselves rather than take a job with an

established Virginia provider, the State irrationally requires Plaintiffs to undergo a complicated and expensive administrative process to obtain approval by the State Health Commissioner—and acquiescence by competing in-state providers—before they can open these medical facilities or import medical equipment into Virginia. (J.A. 18 at ¶¶ 45-46.)

## I.    VIRGINIA'S CERTIFICATE-OF-NEED PROGRAM PREVENTS PLAINTIFFS FROM PROVIDING INNOVATIVE AND COST-EFFECTIVE MEDICAL SERVICES IN VIRGINIA.

Each Plaintiff wants to use private funds to invest in new medical equipment and services in Virginia, but each is prevented from doing so by the State's certificate-of-need requirement.  (J.A. 17 at ¶ 41.)

### A.    Colon Health Centers Is Blocked from Offering Virginians Life-Saving Cancer Screening and Treatment.

Dr. Mark Baumel founded Colon Health Centers to provide individuals with a new life-saving service for screening colorectal cancer ("colon cancer").  (J.A. 18 at ¶ 47.)  Ninety percent of colon-cancer deaths are preventable through proper screening methods, but fewer than 50 percent of at-risk individuals get screened because of disadvantages associated with the two current screening methods: optical colonoscopy and virtual colonoscopy.  (J.A. 19 at ¶¶ 49-51.)

Optical colonoscopy is an uncomfortably invasive procedure by which a doctor, most commonly a gastroenterologist ("GI physician") advances a six-foot tube attached to a camera into the patient in search of abnormalities.  (J.A. 19-20 at

5

¶ 54.)  In 15 to 20 percent of patients, a polyp or other abnormality is detected and can be removed immediately by the GI physician.  (*Id*.)  Many patients forgo getting screened at all because the procedure is uncomfortable and poses certain health risks as well.  (J.A. 20 at ¶¶ 56-57.)

In virtual colonoscopy, by contrast, a high-capacity CT-scanner takes multiple, cross-sectional images, which a computer combines to form a three-dimensional image of the patient's colon and surrounding abdominal cavity.  (J.A. 20-21 at ¶ 59.)  Because virtual colonoscopy is noninvasive, it allows the 80 to 85 percent of screened individuals without any detected abnormality to avoid the medical risks and discomfort of optical colonoscopy.  (J.A. 21 at ¶ 62.)  However, virtual colonoscopy, which is traditionally performed by a specialized radiologist, has the drawback of requiring a second visit to a GI physician in order to remove detected polyps in 15 to 20 percent of patients.  (J.A. 22 at ¶ 64.)

To help save lives by increasing the number of people getting screened, Dr. Baumel has combined the best of both worlds:  the advantages and convenience of noninvasive virtual colonoscopy with the capability to immediately remove polyps offered by optical colonoscopy.  (J.A. 22-23 at ¶¶ 65, 70.)  Colon Health Centers partners with local GI physicians to open a "one-stop shop" for colon health services, equipped with a CT-scanner.  (J.A. 22-23 at ¶ 67.)  At the colon health center, patients undergo a virtual colonoscopy; their digital scan is immediately

6

sent to Colon Health Centers' team of dedicated radiologists (located in Ohio but licensed in the state of the local GI physicians) who interpret the scan and report the results within 30 to 45 minutes. (J.A. 23 at ¶ 68.) If any abnormality is reported, the GI physician can immediately perform the necessary procedure, without requiring a second appointment, while patients without any abnormality can resume their regular activities. (*Id.*) Currently, Dr. Baumel offers this innovative medical service at his flagship facility in Delaware and in New Jersey. (J.A. 24 at ¶ 71.)

Unfortunately for patients in Virginia, Virginia's certificate-of-need program has prevented same-day virtual colonoscopy and treatment from even being available within the state. (J.A. 41 at ¶ 180.) In 2009, Dr. Baumel's plans to open three colon health centers in Virginia were stymied when the State Health Commissioner denied each of three proposed centers' applications for a certificate of need after allowing established facilities and would-be competitors to intervene and oppose the applications. (J.A. 36-38 at ¶¶ 146-56.) The expense, delay, and complete uncertainty of the certificate-of-need process have made it impossible for Dr. Baumel to form future partnerships with Virginia doctors to attempt to purchase CT scanners. (J.A. 38 at ¶ 158.) But for the State's certificate-of-need requirement, Dr. Baumel would be able to enter into agreements to introduce integrated virtual colonoscopy to Virginia. (J.A. 38 at ¶ 159.)

**B.      Progressive Radiology Is Prevented from Offering Specialized, Cost-Effective Diagnostic Imaging to Patients in Virginia.**

Virginia's certificate-of-need program has also prevented Dr. Mark Monteferrante and other Virginia-licensed doctors at Progressive Radiology from offering the services they (until recently) have offered to patients in Virginia for the past 25 years.  (J.A. 12 at ¶ 14; J.A. 25-26 at ¶¶ 80-86.)

Progressive Radiology offers cost-effective medical imaging services throughout Maryland and the District of Columbia.  (J.A. 24 at ¶ 74.)  Dr. Monteferrante and his partners specialize in interpreting MRI scans to diagnose orthopedic and neurological injuries.  (J.A. 24 at ¶ 75.)  For years, Progressive Radiology provided all the professional radiology physician services for a medical imaging center in Northern Virginia.  (J.A. 25 at ¶ 80.)  When that medical imaging center was sold to Inova Health Systems, an enormous healthcare conglomerate based in Virginia, Progressive Radiology decided to start a center of its own to continue serving patients in Northern Virginia.  (J.A. 25-26 at ¶¶ 82-85.)  However, Virginia prohibits Progressive Radiology from opening this new MRI office or even purchasing the MRI scanner unless it first obtains a certificate of need.  (J.A. 26 at ¶ 86.)  The time, expense, and almost certain intervention by established in-state businesses places an undue burden on Progressive Radiology's ability to import these scanners into Virginia.  (J.A. 39-40 at ¶¶ 165-67.)

## II.    VIRGINIA'S CERTIFICATE-OF-NEED PROGRAM IMPOSES HUGE BURDENS AND ACHIEVES NOTHING BEYOND SHEER ECONOMIC PROTECTIONISM.

The first medical certificate-of-need requirements were imposed in the mid-1960s as state and local officials tried to allocate federal funding for the creation of hospitals.  (J.A. 26 at ¶ 87.)  The initial theory of the requirements was to control public healthcare spending by restricting supply and ensuring that publicly funded facilities served a discrete geographical region free from economic competition.  (J.A. 26 at ¶ 88.)  In 1974, in response to a nationwide lobbying campaign by the American Hospital Association, Congress passed a law requiring states to adopt certificate-of-need programs in order to receive certain federal healthcare subsidies.  (J.A. 27 at ¶¶ 90, 92.)  All but one state (Louisiana) eventually complied.  (J.A. at 27 ¶ 94.)

In 1986, Congress repealed this requirement and abandoned its experiment with certificate-of-need programs, citing three developments:  (i) both Medicare and Medicaid had been restructured to a fee-for-service reimbursement system, which eliminated the original rationale for these programs; (2) mounting evidence demonstrated that certificate-of-need programs actually increased healthcare costs; and (3) certificate-of-need programs produced detrimental effects as local officials, trying to protect local interests, took myopic or parochial views of what kind of medical services a community "needed."  (J.A. 28 at ¶ 96.)  Congress's conclusions about the anticompetitive effects of certificate-of-need requirements

9

have since been buttressed, most notably by a 2004 joint study by the Department of Justice and the Federal Trade Commission, concluding that these programs pose "serious anticompetitive risks that usually outweigh their purported economic benefits." (J.A. 28-29 at ¶ 99.) Despite the federal repeal, local lobbying efforts to protect in-state businesses have kept some form of certificate-of-need requirement in place in 36 states, including Virginia. (J.A. 29 at ¶ 101.) Virginia is one of only a few states requiring a certificate of need for CT or MRI machines.

Whereas certificate-of-need requirements originated as an attempt to protect publicly funded medical facilities from competition, Virginia goes far beyond this rationale. It requires a certificate for activities that include (but are by no means limited to): (1) establishing a medical facility; (2) introducing into an existing medical care facility any new healthcare service, including CT scanning and MRI; and (3) adding specified medical equipment to a medical care facility, including a CT or MRI scanner. (J.A. 29-30 at ¶¶ 106-07 (citing Va. Code § 32.1-102.1).) The law exempts from its requirements some imaging devices, like nuclear cardiac imaging. (J.A. 30 at ¶¶ 109-11.) Thus, nuclear cardiac imaging equipment may be freely purchased in Virginia, but CT or MRI scanners may not. (*Id*.)

Further, Virginia's certificate-of-need program imposes one of the longest, most expensive, and most uncertain review processes anywhere in the country. On its face, the certificate-of-need program imposes a 190-day multi-step review

10

process, in which applicants bear the burden of demonstrating a "need" for their proposed services.  (J.A. 31-34 at ¶¶ 117-36; J.A. 49.)  But even that vastly understates the burden faced by many applicants because the law also permits established businesses to intervene in the process and demand an additional fact-finding conference, which in many cases will mean the application process can take literally years.[1]  (J.A. 34-35 at ¶¶ 133-38.)  And even if an applicant navigates this lengthy process, they have no way of predicting whether they will be successful:  Virginia has fully 20 different statutory criteria that must be considered in evaluating the "need" for a new facility or equipment, and no one factor is controlling.  (J.A. 31 at ¶¶ 113-14.)

As a direct result of this requirement, Plaintiffs and others like them are locked out of the Virginia market (J.A. 40-42 at ¶¶ 168-71, 178, 187-88), and Virginia is largely closed off from interstate trade in medical equipment (like CT scanners and MRI scanners) or services that are covered by its certificate-of-need program.  (J.A. 43 at ¶¶ 193-97.)

## SUMMARY OF THE ARGUMENT

In dismissing Plaintiffs' Complaint for failure to state a claim, the district court misapplied both the standard for deciding a motion under Rule 12(b)(6) and

---

[1]  These fact-finding conferences are almost exclusively requested by entities that would be in economic competition with the applicant's proposed facility or equipment.  (J.A. 34-35 at ¶¶ 137-38.)

the substantive law of the Commerce Clause and the Fourteenth Amendment.  In an opinion that reproduced the State's moving brief almost word for word, the district court disregarded the allegations of the Complaint in order to make its own factual determinations and draw factual inferences against Plaintiffs, while relying predominantly on cases decided either at summary judgment or after trial.  Failing to address any of Plaintiffs' arguments or distinguish supporting cases cited by Plaintiffs, the district court committed independent errors with respect to Plaintiffs' claims under both the Commerce Clause and the Fourteenth Amendment; each of these errors independently requires reversal.

First, the district court failed to properly apply binding precedent controlling Plaintiffs' claims under the dormant aspect of the Commerce Clause.  The Complaint supports two different theories of recovery under the Commerce Clause.  First, under what courts have called "*Pike* balancing," it alleges that the certificate-of-need requirement imposes burdens on interstate commerce that far outweigh any local benefits the requirement achieves.  And second, it alleges that the practical effect (and, indeed, purpose) of the certificate-of-need requirement is to benefit in-state healthcare businesses at the expense of out-of-state healthcare businesses.  The district court's opinion does not properly address either theory.

The opinion below fundamentally misunderstands the Supreme Court's *Pike* balancing test.  Under that standard, courts must weigh the burdens a challenged

12

policy imposes on interstate commerce *as a whole* against the local benefits that policy achieves. But the district court appears to have only considered the burden on interstate commerce caused by keeping Plaintiffs (who, admittedly, make up only a tiny fraction of "interstate commerce") out of the Virginia market, rather than considering the overall burden on interstate commerce created by the program. The court then compounds its error by weighing this burden against the *purpose* (rather than the benefits) of the program. Applying this incorrect version of the *Pike* test led the district court to dismiss the Complaint's *Pike* balancing claim despite clear and specific allegations that (1) Virginia's certificate-of-need program imposes enormous burdens on the free flow of interstate commerce while (2) failing to achieve any local benefits whatsoever. This was reversible error.

The district court also erred in evaluating Plaintiffs' discrimination claim under the dormant Commerce Clause. The Complaint alleges that the certificate-of-need program has both the purpose and effect of discriminating against interstate commerce, and that it accomplishes this by giving in-state interests the power to intervene in (and therefore increase the cost and uncertainty of) the application process. The district court disregarded these allegations and instead found that it was impossible for the program to have the practical effect of discriminating against interstate commerce because (according to statistics drawn from outside the Complaint) many applications are ultimately granted. This, too,

13

was reversible error.  The Complaint makes clear that the burdens and uncertainty of the application process dissuades many would-be entrepreneurs from applying in the first place, and it makes clear that these burdens (and specifically, the special power of established in-state businesses to intervene) have the practical result of disproportionately favoring in-state over out-of-state interests.  These allegations, disregarded by the district court, are sufficient to state a claim under the dormant aspect of the Commerce Clause.

The district court similarly erred in dismissing Plaintiffs' rational-basis claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  First, the court again improperly disregarded the allegations of the Complaint and made the (incorrect) factual determination that, for Equal Protection purposes, the equipment Plaintiffs want to purchase is not "similarly situated" to other equipment that is exempted from the law's burdens.  The district court further erred by conflating the issue of whether Plaintiffs' allegations were sufficient to survive a motion to dismiss with whether the allegations of the Complaint contained every piece of evidence that would be necessary to satisfy their eventual evidentiary burden under the rational-basis test.  Both of these errors independently demand reversal.

Finally, Plaintiffs seek to preserve their claim under the Privileges or Immunities Clause of the Fourteenth Amendment.  They concede that this claim is

foreclosed in this Court (and made the same concession below) but nonetheless preserve it in the event of Supreme Court review.

## ARGUMENT

### Standard of Review

This Court reviews *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (reversing district court's dismissal of complaint).

## I.  THE DISTRICT COURT'S OPINION FAILS TO PROPERLY APPLY RULE 12(B)(6)'S PLAUSIBILITY STANDARD.

Throughout its opinion, the district court failed to apply the proper standard under Rule 12(b)(6).  Rather than accept the allegations of the Complaint as true, the district court disputed (or ignored) them.  Rather than draw reasonable inferences in favor of Plaintiffs, it drew inferences in favor of the State.  And rather than determine whether the Complaint alleged sufficient facts to allow Plaintiffs an opportunity to present evidence, the district court decided it was improbable that Plaintiffs would win if given that opportunity.  Simply put, the district court failed to apply the doctrines governing Rule 12(b)(6), and its order should therefore be reversed.

A court should not dismiss a complaint for failure to state a claim if—taking all the factual allegations as true and drawing all reasonable inferences in the

15

plaintiff's favor—the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *De'lonta v. Johnson*, – F.3d – , No. 11-7482, 2013 WL 310350, at *3 (4th Cir. Jan. 28, 2013). As the Supreme Court has cautioned, "[t]he plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556 ("Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage."). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556; *see also* Wright and Miller, Federal Practice & Procedure, § 1356 (3d ed. 2012) ("[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."). Accordingly, "dismissals based on a judge's disbelief of a complaint's factual allegations" require reversal. *Nietzke v. Williams*, 490 U.S. 319, 327 (1989) (cited approvingly in *Twombly*).

16

The district court did not apply this standard. Instead, in an almost verbatim copy of Virginia's opening brief in support of its motion to dismiss,[2] the district court failed to acknowledge any of Plaintiffs' arguments in opposition to that motion, supporting case citations, or even most of the Complaint's factual allegations. While this sort of wholesale copying of one party's brief is not necessarily an independent ground for reversal, the practice has been sharply criticized by appellate courts. *See*, *e.g.*, *Anderson v. City of Bessemer City*, 470 U.S. 564, 571-72 (1985) (criticizing verbatim adoption of one party's proposed findings of fact); *J.J. Cassone Bakery, Inc. v. N.L.R.B.*, 554 F.3d 1041, 1044-46 (D.C. Cir. 2009) (criticizing ALJ's verbatim adoption of one party's brief); *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 732 (3d Cir. 2004) (noting that the verbatim adoption of a party's proposed opinion "vitiates the vital purposes served by judicial opinions"); *cf. Chicopee Mfg. Corp. v. Kendall Co.*, 288 F.2d 719, 724-25 (4th Cir. 1961) (laying out four-factor test—not met here—for reversal based on verbatim adoption of one party's proposal). Although Plaintiffs here do not argue that the district court should be reversed simply because it adopted one party's brief without any substantive editing, they do believe this verbatim copying

---

[2] The district court's opinion is substantively identical to the State's moving brief. The district court's editorial changes amounted to little more than omitting citations and block quotations that had been included in the original brief. *Compare* J.A. 50-72 (State Defendants' Mem. in Supp. of Mot. to Dismiss) *with* J.A. 123-47 (Mem. Op.).

17

illustrates the district court's pervasive error:  Instead of making every reasonable inference in *favor* of Plaintiffs, it simply adopted wholesale Virginia's view of the facts.

The most glaring indication that the district court failed to apply the appropriate Rule 12(b)(6) standard is that the district court failed to rely on cases decided under Rule 12(b)(6).  Indeed, with a single exception, the cases relied upon by the district court in evaluating the claims in the Complaint were decided in a more advanced procedural posture—at trial or summary judgment, after the development and presentation of evidence.  And the one exception—the only case cited by the district court that was resolved in the context of a Rule 12(b)(6) motion (*see* J.A. 132 (citing *Star Scientific, Inc. v. Beales*, 278 F.3d 339 (4th Cir. 2002)))—is simply inapposite here.  In *Star Scientific*, a cigarette manufacturer challenged a Virginia statute implementing the Master Settlement Agreement between 46 states and the country's major tobacco manufacturers.  278 F.3d at 343-47.  Under the Virginia statute, tobacco companies that did not sign onto the settlement were required to set aside money in escrow, based on the number of cigarettes sold in Virginia, to ensure that they would not be judgment proof in the event Virginia subsequently brought a claim against them for the health consequences of their cigarettes.  *Id.* at 346.

18

In contrast to this case, in *Star Scientific* the plaintiff did not dispute that the law's purpose (preventing cigarette companies from being judgment proof against future smoking-related healthcare costs) was logically achieved by the law's means (requirement of an escrow payment account). *Id*. at 357. By definition, forcing companies to put money in escrow would prevent those companies from being judgment proof, and no one in that case argued that the plaintiff, a cigarette manufacturer, was not creating exactly the sort of public-health dangers that might result in a judgment against it. *Id.* at 361 ("[Star Scientific] cannot deny that it is a cigarette manufacturer whose products will continue to threaten the public health. [And] it does not suggest any such denial. . . . "). And the major burdens imposed by the law in that case were (again concededly) redundant—the plaintiff in that case complained about the burdens of recording the number of cigarette sales in Virginia, a practice already required under a separate state law not challenged in that case. *Id*. at 357.

None of those things is true of the Complaint in this case. Here, the Plaintiffs have alleged (and can prove, if given the chance) that the certificate-of-need program imposes huge burdens on interstate commerce (and on Plaintiffs specifically), and that the program achieves literally no benefits for the public. They have alleged (and can prove) that the certificate-of-need program, in practical effect, discriminates against interstate commerce. They have alleged (and can

prove) that there is no logically conceivable link between the program and any legitimate public interest. And, unlike in *Star Scientific*, they certainly do not concede that their proposed activities pose any danger to the public that would be in any way ameliorated by the law they challenge.

As discussed in more detail below, Plaintiffs were entitled to have their allegations taken as true; they were entitled to have all reasonable inferences drawn in their favor; and they were entitled to move forward with an opportunity to prove their allegations on a fully developed record. *Twombly*, 550 U.S. at 555-56. They received none of this, and the district court's decision must therefore be reversed.

## II.  THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' CLAIM UNDER THE DORMANT COMMERCE CLAUSE.

The Constitution's grant of authority for Congress to regulate interstate commerce has "long been understood [ ] to provide protection from state legislation inimical to the national commerce [even] where Congress has not acted." *Barclays Bank PLC v. Franchise Tax Bd.*, 512 U.S. 298, 310 (1994) (quotation marks and citation omitted). Claims under this "dormant" Commerce Clause take two forms: (1) plaintiffs may claim that a law imposes an "undue burden" on interstate commerce under what is known as "*Pike* balancing" or (2) plaintiffs may claim that a law discriminates (on its face or in practical effect)

20

against interstate commerce.[3] *Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005) (citation omitted). Both of these inquiries are essentially practical. *See*, *e.g.*, *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (describing the discrimination inquiry as one into the law's "practical effect"); *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 338-39 (2008) (describing *Pike* balancing test). The Complaint in this case plausibly alleges both types of Commerce Clause claims, and the district court erred in dismissing both of them.

In an "undue burden" claim under the Commerce Clause, courts must inquire "whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The Complaint clearly alleges a *Pike* claim: It alleges that the certificate-of-need program imposes an enormous burden on the free interstate flow of medical equipment and services, and it alleges that the program achieves literally no local benefits. But the district court misapplied the *Pike* test, erroneously weighing the effect on Plaintiffs themselves (rather than on the free flow of interstate commerce

---

[3] Generally, plaintiffs bringing dormant Commerce Clause challenges can prevail in three ways. First, they can demonstrate under *Pike* that a law imposes burdens on interstate commerce that outweigh its local benefits; this claim is discussed in subsection A. Second, they can demonstrate that a law, in purpose or practical effect, discriminates against out-of-state interests in favor of in-state interests; this claim is discussed in subsection B. Or they can demonstrate that a law, on its face, discriminates against out-of-state commerce; Plaintiffs here do not allege a facial discrimination claim.

21

as a whole) against the purpose of the law (rather than its effects). As described in subsection A below, this was reversible legal error.

The Complaint also stated a second plausible claim under the Commerce Clause by alleging that the certificate-of-need program grants special privileges to established in-state businesses, with the practical effect of discriminating against outsiders. Where a law's "effect is to favor in-state economic interests over out-of-state interests," courts generally strike it down "without further inquiry." *Brown-Forman Distillers Corp.*, 476 U.S. at 579. Nonetheless, the district court dismissed this claim as well—and, as explained in subsection B below, it did so by overlooking the majority of the Complaint's factual allegations detailing how Virginia's certificate-of-need program favors in-state healthcare facilities. Having failed to cite or discuss the substantive allegations of the Complaint, the district court then incorrectly determined that Plaintiffs' theory of discrimination against interstate commerce was a "mere conclusion." (J.A. 143.) Each of these errors in Commerce Clause analysis is an independent ground for reversal.

**A.    The District Court Misapplied the *Pike* Balancing Test to Plaintiffs' Claim That Virginia's Certificate-of-Need Program Unduly Burdens Interstate Commerce.**

A state statute violates the dormant Commerce Clause if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142; *see also Yamaha Motor Corp.*, 401 F.3d at

563 & 569 (holding Virginia law that provided "economic protection for existing motorcycle dealers by restricting the ability of manufacturers (or distributors) to open new dealerships" unduly burdened interstate commerce in violation of the dormant Commerce Clause).

The district court misapplied both parts of this test. First, it incorrectly examined the burden on Plaintiffs themselves, instead of the burden on interstate commerce in medical equipment and services. It then compounded this error by weighing these burdens against whether the law had a legitimate *purpose* instead of whether there were any local benefits.

> **1.     The district court incorrectly focused on the burden on Plaintiffs rather than the burden on interstate commerce.**

In evaluating the burden Virginia's certificate-of-need program imposes on interstate commerce, the district court incorrectly focused on the burdens suffered by Plaintiffs. (J.A. 146) (describing "the burden [Plaintiffs] suffer as potential participants in the flow of interstate commerce"). However, in a *Pike* claim for undue burden on interstate commerce, the relevant inquiry is whether the challenged law imposes substantial burdens on interstate commerce itself, not on the particular plaintiffs. *See*, *e.g.*, *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978) (observing that the dormant Commerce Clause "protects the interstate market, not particular interstate firms").

23

Nevertheless, the district court focused on the fact that Plaintiffs were "*two relatively small businesses*" that:

> would likely open a couple offices in Virginia, perhaps traveling on occasion between Virginia and other mid-Atlantic states and perhaps purchasing, at most, a couple of MRI machines or CT scanners from outside the State.

(J.A. 146) (emphasis added.)  According to this logic, the district court concluded that the burden Plaintiffs "suffer as potential participants in the flow of interstate commerce" is not substantial or "clearly excessive in relation to the putative local benefits of controlling healthcare costs." (*Id.*)  Under the district court's erroneous theory, then, small providers like Plaintiffs would never be able to state a *Pike* claim, but larger companies like Sharp or General Electric, which actually make and sell imaging equipment, would be able to.  That is not the law.

Instead, courts agree that the "size of the burden on an individual plaintiff is irrelevant." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009) (finding plaintiffs' dormant commerce clause allegations sufficient to survive a motion to dismiss and reversing district court's dismissal).  In *Selevan*, plaintiffs in a putative class action alleged that the New York Thruway Authority's policy of charging nonresidents more than eight times the tolls charged to Grand Island residents placed an undue burden on interstate commerce that exceeded any local

24

benefit.[4] (*Id.*) The Second Circuit rejected the defendant's arguments that the lead plaintiffs' admittedly small injury of paying the full-price toll during one trip meant they failed to state a plausible *Pike* claim. *Id.*; *see also Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 83, 88 (2d Cir. 2009) (finding ferry passenger fee ranging from 50 cents to two dollars that was a small portion of the total ticket price violated dormant Commerce Clause). The Second Circuit clarified that "whether a state policy violates the dormant Commerce Clause does not depend on the extent of its impact on an individual plaintiff." 584 F.3d at 96. "Rather, a state policy that is challenged under the dormant Commerce Clause must be judged by its overall economic impact on *interstate commerce* in relation to the putative local benefits conferred." *Id.* at 96. Nothing in this Circuit's precedent splits from these holdings, and there is no reason for this Court to do so now.

Here, the Complaint alleges sufficient facts showing how Virginia burdens interstate commerce. Specifically, Plaintiffs allege that there is a thriving interstate

---

[4] In a separate holding, the Second Circuit affirmed the district court's ruling that the plaintiffs, individual motorists, failed to allege the policy also discriminated against interstate commerce because the plaintiffs did not identify any in-state *commercial* interest that is favored or out-of-state competitor that is harmed. *Id.* at 95. Here, with respect to Plaintiffs' second discrimination claim under the dormant Commerce Clause, Plaintiffs clearly identify the in-state medical businesses favored by Virginia's certificate-of-need scheme and the out-of-state competitors, including themselves, that are harmed. (*See, e.g.*, J.A. 34-35 at ¶¶ 133, 137; J.A. 40-41 at ¶¶ 168, 178.)

market in CT and MRI scanners, which are nearly all manufactured outside of

Virginia.  (J.A. 43 at ¶¶ 194-95.)  Because no one in Virginia can purchase a CT or

MRI scanner without obtaining a certificate of need, the flow of those goods into

Virginia is substantially burdened or restricted.  (J.A. 43 at ¶ 197.)  Furthermore,

Plaintiffs allege the existence of an interstate market in medical services, including

colon-cancer screening and treatment and radiology services.  (J.A. 43 at ¶ 198.)

Plaintiffs allege that Virginia's certificate-of-need program has prevented same-

day virtual colonoscopy and treatment from even being available within its

borders.  (J.A. 41 at ¶ 180.)  But in addition to preventing Plaintiffs from offering

new services or purchasing certain medical equipment in interstate commerce,

Virginia's certificate-of-need program also burdens everyone else seeking to

purchase goods or offer services in interstate commerce as well.  (J.A. 43-44 at

¶ 199.)  This is more than sufficient to state a plausible *Pike* balancing claim.  *See*,

*e.g.*, *Medigen of Ky., Inc. v. Public Service Comm'n*, 985 F.2d 164, 167 (4th Cir.

1993) (affirming district court's judgment after trial that state law requiring

transporters of medical waste to obtain a certificate of convenience and necessity

placed an undue burden on interstate commerce).

### 2.     The district court failed to analyze whether there were any local benefits under *Pike*.

In addition to misconstruing the burden to interstate commerce under *Pike*,

the district court failed to weigh that burden against the presence of local benefits.

26

Instead, the Court incorrectly focused on whether Virginia's certificate-of-need program had "a legitimate local *purpose*." (J.A. 145) (emphasis added).

In determining whether a state law unjustifiably burdens the interstate flow of goods and services, *Pike* requires a court to determine whether the law achieves any local *benefits*. *Medigen of Ky., Inc.*, 985 F.2d at 166. Here, the district court did not even address the local benefits of the law. Instead the district court concluded that the "regulation of health and of the medical profession are clearly within the reach of traditional state regulation." (J.A. 145).[5]

This Circuit has required "objective precision in identifying [local] benefits." *Yamaha Motor Corp.*, 401 F.3d at 570 (rejecting Virginia's argument that benefits can be presumed based on purpose). This Court has repeatedly concluded that the mere fact that the government can *assert* that a law has local benefits is insufficient to outweigh the law's burdens imposed on interstate commerce. *See Medigen of Ky., Inc.*, 985 F.2d at 167 (concluding that purported "'ruinous' effects of competition" that a statute aimed to combat were "entirely speculative"). By crediting the law's stated purpose over the Complaint's factual allegations about the law's actual effects, the district court violated this Circuit's rule.

---

[5] Of course, if a state law has an illegitimate purpose, it is struck down without further inquiry under the discrimination theory, discussed below, and a court does not engage in the *Pike* balancing test. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 333 (4th Cir. 2001).

27

Indeed, Plaintiffs allege that any purported benefits in reducing healthcare costs are purely illusory. (J.A. 44 at ¶ 208.) The Complaint discusses at length how certificate-of-need programs, like Virginia's, are a relic of a long-abandoned and admittedly failed federal experiment. (J.A. 26-29 at ¶¶ 87-102.) Plaintiffs allege that after conducting extensive studies, the federal government concluded that certificate-of-need programs "are not successful in containing health care costs, and that they pose serious anticompetitive risks that usually outweigh their purported economic benefits." (J.A. 28-29 at ¶ 99.) Although Virginia disputes these allegations with respect to its own certificate-of-need program, the district court was bound to accept Plaintiffs' allegations as true at the pleadings stage. *See Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . ."). And the Complaint alleges that Virginia's certificate-of-need program *fails* to achieve these purported local benefits, or indeed that it generates any local benefits at all. (J.A. 44 at ¶¶ 202, 208-09.)

In sum, by misconstruing both sides of the *Pike* balancing test, the district court erroneously dismissed Plaintiffs' viable dormant Commerce Clause claim as implausible. On this basis alone, the district court's ruling must be reversed.

### B. The District Court Incorrectly Rejected the Complaint's Allegations of Discrimination against Interstate Commerce.

The Complaint also stated a second type of dormant Commerce Clause claim under the theory that Virginia's certificate-of-need program discriminates

28

against out-of-state interests both in purpose and in practical effect.[6]  *Waste Mgmt.*

*Holdings, Inc. v. Gilmore*, 252 F.3d 316, 333 (4th Cir. 2001).  The district court

dismissed this claim as "conclusory," but it did so only after making two

fundamental errors.  First, it flatly disregarded the Complaint's detailed allegations

about the certificate-of-need program's practical operation and instead cited a

single summary paragraph that it deemed "conclusory."  Second, it determined that

the Complaint's allegations of discrimination were "without foundation" only by

improperly drawing inferences in favor of the State based on:  (a) the fact that one

of twenty non-controlling statutory factors in granting a certificate of need speaks

of the importance of "competition"; and (b) statistics, outside the Complaint,

regarding the number of certificates granted in 2011.

### 1.    The district court failed to even consider many of the Complaint's allegations of discrimination.

First, the district court wrongly determined that Plaintiffs' claim of

protectionist discrimination "is a mere conclusion supported by no allegation of

---

[6]  A statute also violates the Commerce Clause if it discriminates against out-of-state interests on its face.  *Waste Mgmt. Holdings, Inc.*, 252 F.3d at 333.  Plaintiffs did not argue—and have not alleged—that the certificate-of-need program is facially discriminatory, only that it is discriminatory in its purpose and practical effect.  The district court nonetheless rejected Plaintiffs' discrimination claims because it found the program was facially neutral.  (J.A. 143-44 ("While it is true that plaintiffs are non-resident companies owned and operated by non-residents that are subject to the burdens imposed by the  [certificate-of-need program], *so is everyone else* who seeks to set-up shop and make certain capital expenditures in the Commonwealth.").)

fact or provision of state law."[7]  (J.A. 143.)  However, the Complaint contains

exhaustive and specific allegations about the certificate-of-need program's purpose

and its practical effect.  With respect to discriminatory purpose, Plaintiffs allege

that the primary purpose of Virginia's certificate-of-need program is to provide

existing healthcare providers (*i.e.*, in-state interests) with "a government-backed

shield from competition."  (J.A. 29 at ¶ 103.)  Supporting this allegation, the

Complaint cites to Virginia's own regulations, which identify the guiding purpose

of the program as "discourag[ing] the proliferation of services that would

undermine the ability of essential community providers to maintain their financial

viability."  (J.A. 29 at ¶ 104 (citing 12 Va. Admin. Code § 5-230-30(5)).)  In other

words, the program aims to insulate existing in-state businesses (providers in the

community) from competition.

Moreover, the Complaint alleges, in great detail, the mechanisms by which

the certificate-of-need program discriminates against out-of-state applicants in

practice.  Methodically describing each step of the certificate-of-need process, the

Complaint highlights the role in-state medical businesses play in protesting

---

[7]  The meat of Plaintiffs' factual allegations are in the Complaint's Statement of
Facts, which alleges in great detail how Virginia imposes a particularly restrictive
certificate-of-need requirement that protects in-state healthcare facilities, (J.A. 29-35
at ¶¶ 103-138), and describes Plaintiffs' firsthand experience with how Virginia's
statutory scheme has, in fact, allowed existing facilities to block out-of-state
competition (J.A. 35-40 at ¶¶ 139-167).  Although these allegations were restated and
incorporated by reference in Plaintiffs' claim for relief for Commerce Clause violation
(J.A. 42 at ¶ 190), they were not even mentioned in the district court's opinion.

applications of would-be competitors.  (J.A. 34-35 at ¶¶ 133-34, 136-38.)  By granting a quasi-veto power to local businesses, Virginia sets a thumb—indeed, a whole hand—on the scale in favor of local providers and in opposition to out-of-state medical providers seeking to enter into Virginia.  (J.A. 44 at ¶¶ 200-01.) Furthermore, under Virginia's certificate-of-need scheme, in-state businesses not only play an enormous role in the *outcome* of an application, but also can lengthen the application process and make it more onerous by intervening in the proceedings.  (J.A. at 34-35 at ¶¶ 133-34, 136-38.)  And these claims are not merely theoretical.  As the Complaint alleges, Drs. Baumel and Monteferrante experienced firsthand in-state facilities maneuvering the certificate-of-need process to oppose their applications and intervene to draw out the proceedings.  (J.A. 35-40 at ¶¶ 139-167.)  *See Yamaha Motor Corp.*, 401 F.3d at 571 (invalidating Virginia statutory provision that "creates a barrier to market entry because of the 'virtual certainty' of a protest").

These allegations, which were wholly disregarded by the district court, state a dormant Commerce Clause claim in and of themselves.  Giving government officials the power to block new businesses for the purpose of protecting the profits of existing in-state businesses discriminates against interstate commerce.  The First Circuit, for example, has held that a Puerto Rican certificate-of-need requirement "discriminate[d] against interstate commerce by permitting the Secretary [of

Health] to block a new pharmacy from locating in its desired location simply because of the adverse competitive effects that the new pharmacy will have on existing pharmacies." *Walgreen Co. v. Rullan*, 405 F.3d 50, 55 (1st Cir. 2005). Specifically noting that existing pharmacies "wield substantial influence in the enforcement of the certificate requirement against proposed new pharmacies," the court held that this "protectionist regime" had discriminatory effects. *Id*. at 56.

Instead of citing or evaluating these allegations,[8] the district court appears to have imposed a kind of "magic words" test, finding that the Complaint did not "allege that while facially neutral, the persons primarily affected by the [certificate-of-need program] are out-of-state medical service providers, rather than all medical service providers seeking to make certain capital expenditures." (J.A. 144.) But the rules of notice pleading do not require magic words. *Iqbal*, 556 U.S. at 678 ("Rule 8 . . . does not require detailed factual allegations.").[9]

---

[8] Plaintiffs highlighted these allegations in their briefing (J.A. 86-89) and at oral argument (J.A. 114) stating that the practical effect of the process described in the Complaint is to advantage in-state interests (who have the right to object or refrain from objecting to new applications) over out-of-state interests (who do not). The district court makes no mention of this argument in its opinion.

[9] Even if magic words *are* required to state a discrimination claim under the Commerce Clause, the district court should have simply given the Plaintiffs leave to amend the Complaint to add a single sentence. *See, e.g.*, *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (noting that dismissal with prejudice is appropriate only where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency") (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) (noting that a plaintiff should have "every opportunity to cure a formal defect in [a] pleading").

Thus, Plaintiffs' exhaustive allegations sufficiently state a claim that

Virginia's certificate-of-need program discriminates against out-of-state

participants in favor of in-state facilities.

>    **2.    The district court improperly drew inferences in favor of the moving party.**

In addition to its failure to cite the relevant portions of the Complaint, the

district court's opinion persistently draws inferences in favor of the State (the

moving party) rather than Plaintiffs.  For example, the district court accepted

verbatim Virginia's argument that "[s]tifling competition is plainly not the purpose

or effect of the [certificate-of-need] laws because one of the factors that must be

considered in determining whether to grant a certificate is the extent to which the

grant would foster *institutional* competition between service providers."  (J.A. 144)

(emphasis added).

However, the district court neglected the fact that, under Virginia's

certificate-of-need program, not all of the statutory factors must be satisfied and no

one factor is controlling.  (J.A. 31 at ¶ 114.)  For example, the Commissioner must

also consider the effect of proposed services on the "utilization" of "existing

services or facilities."  Va. Code. Ann. § 32.1-102.3(B)(5).  Thus, despite

attempting to foster institutional competition, Virginia's certificate-of-need

program could have the practical effect of restricting out-of-state competition.  *See*

*Yamaha Motor Corp.*, 401 F.3d at 571.  Moreover, the fact that the State says it

considers "institutional competition" does not mean that it actually fosters interstate competition rather than competition among existing in-state facilities.

The district court further compounded this error by drawing inferences against Plaintiffs based on Virginia's statistics on the number of times a certificate of need was granted in 2011, concluding that "[a]ny burden on interstate commerce is incidental." (J.A. 144-45.) Even if the statistics Virginia offered (which are outside the scope of the Complaint) were properly before the district court, they do not in any way conflict with the allegations of the Complaint. In light of the huge costs, delay, and uncertainty of the application process, many medical providers (like Plaintiff Progressive Radiology, *see* J.A. 26 at ¶¶ 84-86; J.A. 42 at ¶¶ 187-89) choose not to apply for a certificate of need at all. Others, overwhelmed by the mountain of paperwork and length of the process, fail to complete the lengthy application process after submitting an initial letter of intent. Consequently, statistics regarding the acceptance rate of *completed* applications, by definition, fail to account for would-be applicants who were deterred by the enormous burdens of the process.

The district court's consideration of these statistics underscores its fundamental error: evaluating the evidence on Plaintiffs' dormant Commerce Clause claims on a motion to dismiss. *See*, *e.g.*, *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) (discussing difference between motions to dismiss and

34

motions for summary judgment).  As the Supreme Court has instructed, analyzing a dormant Commerce Clause claim is, at bottom, a *practical* inquiry, regardless of the underlying theory.  *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 402 (1994) ("In either [discrimination or *Pike* claims], the critical consideration is the overall effect of the statute on both local and interstate activity.").

The *practical effect* of Virginia's certificate-of-need requirement cannot be determined in the absence of facts—facts that must be gathered in discovery and determined to be true through the adversarial process.  *See Waste Mgmt. Holdings, Inc.*, 252 F.3d at 334 (recognizing that whether Virginia statute discriminated against interstate commerce in its practical effect or in its purpose were "[q]uite obviously . . . questions of fact").[10]

---

[10]  The district court's reliance on *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1181-82 (4th Cir. 1995), further underscores its error in conducting a merits inquiry.  (J.A. 145.)  In an action arising out of Tyson's unsuccessful attempt to acquire Virginia-based plaintiff WLR Foods, Tyson counterclaimed that Virginia defensive statutes impermissibly restricted an out-of-state bidder from acquiring a Virginia corporation in violation of the dormant Commerce Clause.  65 F.3d at 1177.  On appeal of various rulings by the district court after discovery, the Fourth Circuit rejected Tyson's claim that Virginia's statutes discriminated against interstate commerce because there was "no *evidence* of discrimination" among in-state and out-of-state bidders.  *Id*. at 1181 (emphasis added).  Here, by leaping to the merits, the district court denied Plaintiffs an opportunity to prove the truth of their factual allegations by gathering exactly this evidence in discovery.

Simply put, the question of whether the practical effect of Virginia's certificate-of-need program is to discriminate against interstate commerce is just that:  a practical question.  It must be answered in light of facts, and it cannot be conclusively answered on the basis of ill-founded inferences at the motion-to-dismiss stage.  The district court's opinion must therefore be reversed.

## III.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' RATIONAL-BASIS CLAIMS UNDER THE FOURTEENTH AMENDMENT AS IMPLAUSIBLE.

In dismissing Plaintiffs' Equal Protection and Due Process claims, the district court erred by leapfrogging over Rule 12(b)(6)'s inquiry as to whether Plaintiffs stated plausible claims to determining whether Plaintiffs satisfied their evidentiary burden under the rational-basis test.

This Circuit has recognized that "[t]he rational basis standard . . . cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard."  *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992)).  "The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail . . . ."  (*Id.*)  Thus, "[t]o survive a motion to dismiss for failure to state a claim [under the rational-basis test], a plaintiff must allege facts sufficient to overcome the presumption of rationality."

36

(*Id.*)  Put another way, Plaintiffs must plausibly allege the implausibility of the state's rationales.  And, as demonstrated below, Plaintiffs have done exactly that.

By dismissing Plaintiff's Equal Protection and Due Process claims on the pleadings, the district court erroneously denied Plaintiffs an opportunity to meet their affirmative burden of proving the irrationality of Virginia's certificate-of-need program.

**A.    Just Like Dormant Commerce Claims, Facts Matter in Rational-Basis Cases.**

Facts matter in rational-basis cases—and where plausible allegations are made by plaintiffs, they must not be barred from going forward under Rule 12(b)(6).

Although rational-basis review is deferential, it is not "toothless."  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 439 (1982) (Blackmun, J., concurring); *see also Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) ("[R]ational basis review is not a rubber stamp of all legislative action . . . ."); *Brown v. N.C. DMV*, 166 F.3d 698, 706 (4th Cir. 1999) ("[E]ven rational basis review places limitations on states . . . .").  "The great deference due state economic regulation does not demand judicial blindness to the history of a challenged rule or the context of its adoption nor does it require courts to accept nonsensical explanations for naked transfers of wealth."  *St. Joseph Abbey v. Castille*, 700 F.3d 154, 165 (5th Cir. 2012).  Thus,

while rational-basis plaintiffs carry a heavy burden, it is not an *impossible* burden—but it is one the district court denied Plaintiffs an opportunity to carry.

From its earliest articulations of the rational-basis test, the Supreme Court has been clear that plaintiffs are entitled to introduce evidence demonstrating that a law lacks any rational basis in reality. *See*, *e.g.*, *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938) ("Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist.") (internal citations omitted). Thus, while legislation is presumed to be rational, plaintiffs are entitled to overcome that presumption by introducing contrary evidence. *See*, *e.g.*, *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) ("[P]arties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational."); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n.16 (1975) ("This Court need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation."). And "although rational basis review places no affirmative

evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by *adducing evidence* of irrationality." *St. Joseph Abbey*, 700 F.3d at 162 (emphasis added) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993)); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 590-91 (9th Cir. 2008) ("Consistent with [the Supreme Court's] admonition, our circuit has allowed plaintiffs to rebut the facts underlying defendants' asserted rationale for a classification, to show that the challenged classification could not reasonably be viewed to further the asserted purpose.").

Consequently, however heavy Plaintiffs' burden on these claims may be, Plaintiffs are entitled to try to meet that burden. Dismissing a well-pleaded claim under the already deferential rational-basis test based on hypothesized facts, without affording Plaintiffs an opportunity to rebut those facts with evidence, would short-circuit judicial review entirely. *See Beach Commc'ns, Inc.*, 508 U.S. at 323 n.3 (Stevens, J., concurring).

### B.    In Dismissing Plaintiffs' Equal Protection Claim, the District Court Erred by Failing to Accept Plaintiffs' Factual Allegations as True and Crediting Facts Asserted by the State.

In dismissing Plaintiffs' Equal Protection challenge, the district court not only failed to accept Plaintiffs' factual allegations as true, it improperly made up its own factual determinations. For example, the district court discounted the Complaint's allegation that Plaintiffs are similarly situated to other medical

providers who are exempt from Virginia's certificate-of-need program.[11]  (J.A.

137-38.)  Second, the district court accepted as true the State's hypothesized facts

underlying Virginia's exemptions for certain medical providers.  (J.A. 139.)

The Equal Protection clause commands "that all persons similarly-situated

should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S.

432, 439 (1985).  The general rule is that legislation will be upheld "if the

classification drawn by the statute is rationally related to a legitimate state

interest."  *Id*. at 440.  Here, the district court improperly disputed Plaintiffs' well-

pleaded allegations that Virginia's certificate-of-need program both (1) imposes an

onerous approval process on some medical service providers, like Plaintiffs, but

not on other similarly situated medical providers; and (2) lacks any rational basis to

draw this distinction.

First and foremost, the district court erred by discounting Plaintiffs' factual

allegation that they are similarly situated to other medical providers who are

---

[11]  Similarly, the district court erred in rejecting Plaintiffs' factual allegation
that decreasing the supply of medical services by requiring a certificate of need
fails to decrease healthcare costs.  (J.A. 139 ("[T]he plainly rational basis for the
regulation is holding down healthcare costs in the relevant market by limiting
wasteful duplication of equipment by medical providers.").)  Going beyond the
intuitive and well-established laws of supply and demand, Plaintiffs specifically
alleged the documented and historical failure of certificate-of-need laws to
decrease healthcare costs by limiting supply.  The Complaint cited the joint report
by the Federal Trade Commission and Department of Justice finding that
certificate-of-need laws actually increase healthcare costs by decreasing
competition.  (J.A. 28-29 at ¶ 99.)  The district court erred by failing to credit these
factual allegations as true.

exempt from Virginia's certificate-of-need requirement. (J.A. 138) The Complaint alleges that the certificate-of-need requirement applies to all types of medical imaging and then makes a single exception—nuclear cardiac imaging. (J.A. 30 at ¶ 110.) Moreover, Plaintiffs allege that the subset of nuclear cardiac imaging is similarly situated to other types of nuclear imaging as well as other types of medical imaging. (J.A. 30 at ¶ 111.) Consequently, Plaintiffs allege, the program does not apply evenhandedly. (J.A. 30 at ¶ 109.) Acknowledging that Virginia singles out nuclear cardiac imaging as exempt from the certificate-of-need requirement, the district court summarily concluded that the challenged statute involves "no distinction between persons based on any classification, but only different burdens placed on different activities." (J.A. 138.)[12] Thus, the district court found that the medical services covered by the statute—medical imaging

---

[12] As an initial matter, Plaintiffs can find no basis in law for the district court's apparent assumption that the Equal Protection Clause only applies to distinctions drawn between persons based on their in-born characteristics and not to distinctions drawn between persons based on their activities. Indeed, Equal Protection cases indicate exactly the opposite. *See*, *e.g.*, *Zobel v. Williams*, 457 U.S. 55, 61-62 (1982) (evaluating Equal Protection challenge to distinction between people based on when they moved to Alaska); *Merrifield v. Lockyer*, 547 F.3d 978, 991-92 (9th Cir. 2008) (evaluating Equal Protection challenge to distinctions between people who were allowed to engage in certain kinds of pest control and people who were not). In any event, in this case, the challenged statute regulates medical services by regulating the persons providing of those services, commanding that: "No person shall commence any project without first obtaining a certificate issued by the Commissioner." Va. Code Ann. § 32.1-102.3.

services including nuclear imaging services—are, in fact, different than the one subset of imaging services exempted from the statute, namely nuclear cardiac imaging.

Whether individuals are similarly situated is a quintessential question of fact that cannot be resolved on a motion to dismiss. *See Willis v. Town of Marshall*, 426 F.3d 251, 263-64 (4th Cir. 2005) (reversing summary judgment for town because existence of others similarly situated to plaintiff was a question of fact); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("[W]hether individuals are similarly situated is a factual question for the jury"); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of facts for the jury."). Thus, whether individuals who take computerized x-rays or magnetic images of the abdomen are similarly situated to individuals who take nuclear images of the heart is a factual inquiry and the district court erred in making a factual determination contrary to the allegations in the Complaint.

Second, the district court erred by crediting the State's factual assertions and once again conflating the evidentiary burden Plaintiffs will bear under the rational-basis test with whether Plaintiffs' allegations were sufficient to state a plausible claim. For example, the district court posited that the demand for nuclear cardiac imaging may outpace available providers or that Virginia deregulated nuclear

42

cardiac imaging as an experiment before deregulating further.  (J.A. 139.)  Neither of these factual assertions is drawn from the Complaint (or even properly subject to judicial notice).  Even under the deferential rational-basis test, the district court is not permitted to hypothesize facts outside the Complaint to dismiss a claim at the pleading stage.  As the Fifth Circuit recently admonished, the rational-basis "analysis does not proceed with abstraction for hypothesized ends and means do not include post hoc hypothesized facts."  *St. Joseph Abbey*, 700 F.3d at 162.

Ultimately, the district court concluded that Plaintiffs failed to "negative every conceivable basis which might support" the law's distinctions.  (J.A. 138.)  Even assuming the district court was properly referring to Plaintiffs' burden at the pleading stage, Rule 8's requirement of a "short, plain statement" cannot be construed to force Plaintiffs to allege an endless litany of possible rational bases coupled with allegations that they are false.  Indeed, it is difficult to imagine a court tolerating such a prolix pleading in the first place.[13]  Here, in addition to negating several possible rationales (*see, e.g.*, J.A. 17 at ¶ 41), Plaintiffs went beyond mere conclusory allegations to point to specific equipment (nuclear cardiac imaging equipment) they will show is similarly situated, yet treated differently by

---

[13]  Even if courts would permit this kind of lengthy pleading, plaintiffs would still never succeed in bringing rational-basis claims because after alleging and negating 100 rational bases, the State could always invent a 101st rationale purportedly justifying the challenged law.  The only way around this never-ending cycle is to do what courts actually do with well-pleaded rational-basis claims: allow discovery and the development of a genuine factual record.

Virginia.  (J.A. 30 at ¶¶ 109-11; J.A. 45-46 at ¶¶ 212-19.)  The Federal Rules require no more.  This is precisely why plaintiffs in rational-basis claims are afforded an opportunity to rebut with evidence a state's hypothetical rationales. On remand, Plaintiffs could show that neither of the district court's hypothesized factual assertions is true.

Plaintiffs' allegations of arbitrary carve-outs for favored medical services are alone sufficient to state a plausible Equal Protection claim.  The district court erred in dismissing that claim.

### C.    The District Court Similarly Erred in Dismissing Plaintiffs' Claim Under the Due Process Clause.

Repeatedly invoking the mantra from Supreme Court *dicta* that "a legislative choice is not subject to courtroom factfinding, and may be based on rational speculation unsupported by evidence or empirical data," the district court dismissed out-of-hand Plaintiffs' claim under the Due Process Clause.  (J.A. 136 and 138 (quoting *Beach Commc's, Inc.*, 508 U.S. at 315).)[14]  Yet, myriad cases have been decided by federal courts on the merits under the rational-basis test.  At the very least, these cases demonstrate that legislative deference cannot mean that

---

[14] Despite its extensive reliance on *Beach Communications*, the district court failed to apprehend that the case involved an extensive factual record developed in an administrative proceeding.  508 U.S. at 311.

44

cases involving economic legislation may not go forward if the district court merely imagines a hypothetical basis for the legislation without the benefit of actual facts that are available only through discovery.  Plaintiffs plausibly alleged that the certificate-of-need program violates the Due Process Clause in three independent ways:  (1) there is no logical connection between the program and any legitimate interest; (2) the public harm imposed by the program so vastly overshadows any public benefit as to render the program irrational; and (3) the program achieves nothing beyond economic protectionism (an illegitimate state interest).   Each theory is discussed in turn.

>    **1.    The Complaint sufficiently alleges that there is no logical connection between restricting the supply of medical facilities and increasing access to care or decreasing medical cost.**

A law will fail rational-basis review when there is no logical connection between the government's actions and the government interest (or interests) proffered in support of it.  *See*, *e.g.*, *Williams v. Vermont*, 472 U.S. 14, 23-25 (1985) (holding that Vermont had legitimate interest in encouraging its residents to purchase cars within the state, but there was no logical connection between that interest and the State's attempt to levy a tax on a car purchased out of state before its owner had even moved to Vermont).  In such circumstances, invalidation of the classification is appropriate—deference to legislatures notwithstanding—because

an utter absence of logic renders a statutory scheme arbitrary. The authority to legislate has never been understood to include the power to legislate arbitrarily.[15]

Here, Plaintiffs allege that there is no logical connection between restricting the supply of medical facilities, on the one hand, and increasing access to medical care or decreasing medical costs, on the other. The district court contested this allegation, reasoning that the legislature "could rationally conclude that if there were fewer providers of the same medical services in a particular market, and less equipment and facilities, the amount spent on the services as a whole and with regard to each patient would decrease." (J.A. 135.) In doing so, it ignored this Court's recognition of the inherent contradiction between limiting supply and any attempt to increase access or decrease cost while striking down a similar certificate requirement for transporters of medical waste:

---

[15] *See also Quinn v. Millsap*, 491 U.S. 95, 108 (1989) (finding no logical connection between an individual's ability to understand politics and an individual's ownership or non-ownership of land); *Zobel v. Williams*, 457 U.S. 55, 60-63 (1982) (finding no logical connection between distributing oil revenue to citizens based on the length of their state residency and purported interest in encouraging people to move to Alaska); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 535 (1973) (finding no logical connection between preventing fraud and providing food stamps only to households containing people who are related to one another); *Mayer v. City of Chicago*, 404 U.S. 189, 196 (1971) (finding, where the government had adopted a policy that inability to pay was not a sufficient reason to deny a transcript to a felony defendant, there was no logical reason that policy should not extend to a misdemeanor defendant); *Turner v. Fouche*, 396 U.S. 346, 363-64 (1970) (finding no logical connection between fitness for political office and property ownership).

46

> Restricting market entry [ ] necessarily *limits* the available service because it limits the number of medical waste transporters from which a medical waste generator can seek service. Moreover, restricting market entry does nothing to insure that services are provided at reasonable prices.

*Medigen of Ky., Inc.*, 985 F.2d at 167.

Plaintiffs' Complaint buttresses this intuitive view of market entry by specifically alleging that historically certificate-of-need programs have failed to increase access to healthcare or decrease costs. (*e.g.*, J.A. 28 at ¶¶ 96 -99.) Additionally, Plaintiffs show the lack of any logical connection by alleging that there have been no negative effects in the 14 states that have entirely eliminated their certificate-of-need programs. (J.A. 29 at ¶ 102.) Although a law is not unconstitutional under the rational-basis test merely because it is ineffective, the documented and continued failure of certificate-of-need programs to achieve these goals dramatically undermines the plausibility of those goals. To borrow an adage, the very definition of irrationality is repeating the same mistake over and over again and expecting a different result. Finally, the Complaint alleges that there is no logical connection to a legitimate interest because a primary motivating rationale for certificate-of-need programs was eliminated in 1984 when Congress

restructured the Medicare/Medicaid reimbursement system to a fee-for-service system.  (J.A. 27-28 at ¶¶ 93, 95, 96.)[16]

To be sure, Plaintiffs will be required to *prove* that the certificate-of-need program does not, in fact, have any plausible connection to increased access to medical care or reduced medical costs.  But all they are required to do at this stage is allege specific facts that show the lack of any plausible connection.  They have done so.

>    **2.    The Complaint sufficiently alleges that the public harm imposed by Virginia's certificate-of-need program vastly outweighs any plausible public benefit.**

The Supreme Court has also struck down laws under the rational-basis test when the government's proffered justifications—such as saving money—are so wildly out of proportion with the harm caused by the classification that no rational legislator would countenance them.  For example, in *Plyler v. Doe*, the government asserted that denying public education to the children of illegal immigrants could

---

[16] The Supreme Court has recognized that changed circumstances can render a once-rational law irrational.  This is indeed what happened in the seminal rational-basis decision in *Carolene Products*.  *Compare United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938) *with Milnot Co. v. Richardson*, 350 F. Supp. 221, 224-25 (S.D. Ill. 1972).  *See also Leary v. United States*, 395 U.S. 6, 38 n.68 (1969) (a statute is subject to constitutional attack if legislative facts upon which statute was based no longer exist);  *Nashville, Chattanooga & St. Louis Ry. v. Walters*, 294 U.S. 405, 415 (1935) ("[a] statute valid when enacted may become invalid by change in the conditions to which it is applied");  *Chastleton Corp. v. Sinclair*, 264 U.S. 543, 547 (1924) ("[A] Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared").

help save government funds, which the Court rejected as a "wholly insubstantial [benefit] in light of the costs involved to these children, the State, and the Nation" of creating a subclass of illiterates.  457 U.S. 202, 230 (1982).[17]

Here, Plaintiffs not only allege that certificate-of-need programs do not result in the purported benefits of decreased healthcare costs or increased access to medical services (J.A. 28-29 at ¶¶ 96-99), but also detail how Virginia's certificate-of-need program prevents lifesaving and cost-effective medical services from being offered to patients in Virginia.  (J.A. 18-19 at ¶¶ 48-50; J.A. 22 at ¶ 66; J.A. 24 at ¶ 73.)  These allegations are enough to state a plausible claim that Virginia's certificate-of-need program is irrational because its harms vastly outweigh any purported benefits.

> **3.     The Complaint sufficiently alleges that Virginia's certificate-of-need program only achieves an illegitimate end:  economic protectionism.**

Finally, courts reject laws that seek to advance illegitimate ends like animus or sheer favoritism for its own sake.  The constitutional impermissibility of this

---

[17] *See also James v. Strange*, 407 U.S. 128, 141-42 (1972) (holding that the state funds saved by denying indigent defendants exceptions to the enforcement of debt judgments was grossly disproportionate to the harms it inflicts on debtors); *Lindsey v. Normet*, 405 U.S. 56, 77-78 (1972) (holding that the cost savings from deterring a few frivolous appeals were insufficient to justify a surety requirement that allowed many frivolous appeals, blocked many meritorious appeals, and showered a windfall on landlords); *Reed v. Reed*, 404 U.S. 71, 76-77 (1971) (holding that attempting to reduce the workload of the probate courts by excluding women from service as estate administrators in certain cases would be unconstitutionally arbitrary).

kind of naked preference is well illustrated in *United States Department of Agriculture v. Moreno*, 413 U.S. 528 (1973). In that case, the Supreme Court held that the government could not justify withholding benefits from households made up of unrelated people based on sheer dislike of "hippies." *Id.* at 534. In other words, government must justify its actions by pointing to something beyond a simple desire to harm or favor a discrete group.[18] Cf. Cass R. Sunstein, *Naked Preferences and the Constitution*, 84 Colum. L. Rev. 1689, 1689 (1984) (coining the term "naked preference" to describe "the distribution of resources or opportunities to one group rather than another solely on the ground that those favored have exercised the raw political power to obtain what they want").

Here, Plaintiffs allege that Virginia's certificate-of-need program cannot plausibly be seen as accomplishing anything except providing economic protection for favored business interests. (J.A. 46 at ¶¶ 223-24.) Specifically, Plaintiffs allege that Virginia only requires Plaintiffs to obtain a certificate of need because they plan to open facilities that would compete with established facilities, instead

---

[18] *See also Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (finding no legitimate interest in criminalizing consensual adult homosexual acts); *City of Cleburne*, 473 U.S. at 448 (rejecting sheer dislike of people with mental retardation as legitimate government interest); *Romer v. Evans*, 517 U.S. 620, 634 (1996) (finding no legitimate interest in anti-gay animus); *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 623 (1985) (finding no legitimate interest in creating different classes of *bona fide* residents); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985) (finding no legitimate interest in discriminating against out-of-state companies); *Zobel*, 457 U.S. at 65 (finding no legitimate interest in creating permanent classes of *bona fide* residents).

of working for an established business in Virginia that already owns the necessary equipment. (J.A. 18 at ¶ 43.) And Plaintiffs explain why other rationales, such as protecting public health or safety or promoting fiscal accountability, are not plausible. (J.A. 17 at ¶ 41.)

Simple economic protectionism cannot be a legitimate basis for government action, and a number of federal courts have struck down legislation for that reason—even under the deferential rational-basis test. *See St. Joseph Abbey*, 700 F.3d at 161 ("[N]either precedent nor broader principles suggest[s] that mere economic protection of a pet industry is a legitimate governmental purpose."); *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston*, 660 F.3d 235, 240 (5th Cir. 2011) ("[N]aked economic preferences are impermissible to the extent that they harm consumers."); *Merrifield v. Lockyer*, 547 F.3d 978, 991-92 & n.15 (9th Cir. 2008) (finding no rational basis beyond illegitimate protectionism for pest-handling rules); *Craigmiles v. Giles*, 312 F.3d 220, 224, 228-29 (6th Cir. 2002) (finding no rational basis beyond illegitimate protectionism for casket-sales regulations). *But see Powers v. Harris*, 379 F.3d 1208, 1221 (10th Cir. 2004) (disagreeing and noting that "while baseball may be the national pastime of the citizenry, dishing out special economic benefits to certain in-state industries remains the favored pastime of state and local governments").

51

Again, Plaintiffs do not deny that they will have to prove their case—and bear a heavy burden in doing so. But they have alleged specific facts in their Complaint showing that the certificate-of-need requirement advances no legitimate government end beyond mere protectionism, and they (like the plaintiffs in all the cases cited above) are entitled to build a record to prove their allegations.

**IV.    PLAINTIFFS PRESERVE THEIR PRIVILEGES OR IMMUNITIES CLAIM.**

Plaintiffs also alleged that Virginia's certificate-of-need program violates their right to earn an honest living under the Fourteenth Amendment's Privileges or Immunities Clause. (J.A. 46-47 at ¶¶ 227-31.) Plaintiffs acknowledge that the Supreme Court's decision in the *Slaughter-House Cases* forecloses this claim, as it rendered the Privileges or Immunities Clause "a vain and idle enactment, which accomplished nothing." 83 U.S. 36, 96 (1873) (Field, J., dissenting). While Plaintiffs believe—in accordance with the nearly unanimous consensus of modern scholarship—that *Slaughter-House* was wrongly decided, they recognize it remains binding on this Court (as they recognized it was binding on the district court). Accordingly, Plaintiffs preserve their argument that the Privileges or Immunities Clause should be revisited by the Supreme Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court reverse the district court's dismissal of their Complaint and remand the case to allow Plaintiffs an opportunity to prove their claims.

## REQUEST FOR ORAL ARGUMENT

Due to the significance of the constitutional issues in this case and the broader effects it will have on this Court's doctrines, Plaintiffs respectfully request oral argument.

Respectfully submitted

/s/ Robert J. McNamara
**INSTITUTE FOR JUSTICE**
Robert J. McNamara (VA Bar No. 73208)
William H. Mellor (DC Bar No. 462072)
Darpana M. Sheth (NY Bar No. 4287918)
Lawrence Salzman (CA Bar No. 224727)
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
E-mail: rmcnamara@ij.org;
wmellor@ij.org; dsheth@ij.org;
lsalzman@ij.org

*Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief contains [*12,490*] words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [    ] this brief uses a monospaced typeface and contains [*state the number
        of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [ X ] this brief has been prepared in a proportionally spaced typeface using
        [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

        [    ] this brief has been prepared in a monospaced typeface using [*state
        name and version of word processing program*] with [*state number of
        characters per inch and name of type style*].


Dated: <u>February 28, 2013</u>                    /s/ Robert J. McNamara
                                               *Counsel for Appellants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 28th day of February, 2013, I caused this Brief

of Appellants and Joint Appendix to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

E. Duncan Getchell, Jr.                    Michael H. Brady
SOLICITOR GENERAL OF VIRGINIA              OFFICE OF THE ATTORNEY GENERAL
  OFFICE OF THE ATTORNEY GENERAL           900 East Main Street
900 East Main Street                       Richmond, Virginia  23219
Richmond, Virginia  23219                  (804) 786- 3518
(804) 786-7240

*Counsel for Defendants – Appellees*

I further certify that on this 28th day of February, 2013, I caused the

required copies of the Brief of Appellants and Joint Appendix to be hand filed with

the Clerk of the Court.

/s/ Robert J. McNamara
*Counsel for Appellants*