Record No. 12-2272

_____

In the United States Court of Appeals
For the Fourth Circuit

_____

COLON HEALTH CENTERS OF AMERICA, LLC, *et al.*

*Plaintiffs – Appellants,*

**v.**

BILL HAZEL, in his official capacity as Secretary
of Health and Human Resources, *et al.*,

*Defendants – Appellees.*

_____

On Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria

_____

BRIEF OF APPELLEES

_____

KENNETH T. CUCCINELLI, II
Attorney General of Virginia

E. DUNCAN GETCHELL, JR.
(VSB #14156)
Solicitor General of Virginia
dgetchell@oag.state.va.us

MICHAEL H. BRADY
Assistant Solicitor General

April 1, 2013

PATRICIA L. WEST
 Chief Deputy Attorney General

WESLEY G. RUSSELL, JR.
Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, VA 23219
Telephone: (804) 786-7240
Facsimile: (804) 371-0200
 *Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 12-2272        Caption: Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bill Hazel, in his official capacity as Secretary of Health and Human Resources,
(name of party/amicus)

who is           Appellee          , makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __/s/ Earle Duncan Getchell, Jr.__    Date: ____10/24/2012____

Counsel for: __Appellee__

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__/s/ Earle Duncan Getchell, Jr.__    _____10/24/2012_____
(signature)    (date)

07/19/2012
SCC

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2272__        Caption: __Colon Health Ctrs. of Am., et al. v. Hazel, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bruce Edwards, in his official capacity as Chairman of the Virginia State Board of Health,__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.        Date: 10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                    10/24/2012
         (signature)                                 (date)

07/19/2012
SCC

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 12-2272        Caption: Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Paul Clements, in his official capacity as member of the Virginia State Baord of Health,
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.                    Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                              10/24/2012
          (signature)                                          (date)

07/19/2012                          - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __12-2272__      Caption: __Colon Health Ctrs. of Am., et al. v. Hazel, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kay R. Curling, in her official capacity as member of the Virginia State Board of Health,_____
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
            (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.              Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                          10/24/2012
         (signature)                                       (date)

07/19/2012                       - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  12-2272          Caption:  Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Eric Deaton, in his official capacity as member of the Virginia State Board of Health,
(name of party/amicus)



who is _____ Appellee _____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.            Date: _____10/24/2012_____

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************
I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                      _____10/24/2012_____
        (signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2272__          Caption: _Colon Health Ctrs. of Am., et al. v. Hazel, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_John Detriquet, in his official capacity as member of the Virginia State Board of Health,_
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
            (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.               Date: _____10/24/2012_____

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                     10/24/2012
          (signature)                                  (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _12-2272_      Caption: _Colon Health Ctrs. of Am., et al. v. Hazel, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_James E. Edmondson, Jr., in his official capacity as member of the Virginia State Board of Health,_
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
     (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.                    Date:        10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
**********************************
I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                        10/24/2012
        (signature)                                        (date)

07/19/2012                      - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 12-2272          Caption: Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Steven R. Escobar, in his official capacity as member of the Virginia State Board of Health,
(name of party/amicus)

_____

who is          Appellee          , makes the following disclosure:
      (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.          Date: _____10/24/2012_____

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                    _____10/24/2012_____
(signature)                                              (date)

07/19/2012                    - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __12-2272__        Caption: __Colon Health Ctrs. of Am., et al. v. Hazel, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__H. Anna Jeng, in her official capacity as member of the Virginia State Board of Health,__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                             ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐YES ☑NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.                    Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                    10/24/2012
        (signature)                                      (date)

07/19/2012                         - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 12-2272     Caption: Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Charles K. Johnson, in his official capacity as member of the Virginia State Board of Health,
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
     (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations? ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

- 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.                    Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                              10/24/2012
       (signature)                                             (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>12-2272</u>         Caption: <u>Colon Health Ctrs. of Am., et al. v. Hazel, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Bennie Marshall, in his official capacity as member of the Virginia State Board of Health,</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                               ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.                    Date:     10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 10/24/2012 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                              10/24/2012
(signature)                                                  (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _12-2272_        Caption: _Colon Health Ctrs. of Am., et al. v. Hazel, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Mary McCluskey, in her official capacity as member of the Virginia State Board of Health,_____
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.          Date:     10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                    10/24/2012
        (signature)                                    (date)

07/19/2012                    - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 12-2272      Caption: Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

John W. Seeds, as successor to Brushan Pandya, in his official capacity as member of the Virginia
(name of party/amicus)

State Board of Health,

who is _____ Appellee _____, makes the following disclosure:
       (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.   Does party/amicus have any parent corporations?                              ☐YES ☑NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
     If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.        Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                    10/24/2012
        (signature)                                 (date)

07/19/2012                    - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>12-2272</u>        Caption: <u>Colon Health Ctrs. of Am., et al. v. Hazel, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>M. Catherine Slusher, in her official capacity as member of the Virginia State Board of Health,</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                     ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr._____    Date: _____10/24/2012_____

Counsel for: Appellee_____

## CERTIFICATE OF SERVICE
******************************

I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr._____                    _____10/24/2012_____
            (signature)                                              (date)

07/19/2012
SCC                                      - 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 12-2272        Caption: Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Gail Taylor, in her official capacity as member of the Virginia State Board of Health,
(name of party/amicus)

_____

who is _____ Appellee _____ , makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.                    Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____10/24/2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                        10/24/2012
          (signature)                                      (date)

07/19/2012
SCC

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __12-2272__        Caption: __Colon Health Ctrs. of Am., et al. v. Hazel, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Amy Vest, in her official capacity as member of the Virginia State Board of Health,__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent
       corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                                ☐ YES ☑ NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.          Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************
I certify that on _____10/24/2012_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                          10/24/2012
        (signature)                                       (date)

07/19/2012                        - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __12-2272__    Caption: __Colon Health Ctrs. of Am., et al. v. Hazel, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Dr. Maureen Dempsey, as successor to Karen Remley, in her official capacity as Interim State Health__
(name of party/amicus)

__Commissioner,__

who is _____Appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.            Date:   10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___10/24/2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                         10/24/2012
         (signature)                                       (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  12-2272      Caption:  Colon Health Ctrs. of Am., et al. v. Hazel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Eric O. Bodin, in his official capacity as Director of the Office of Licensure and Certification and
(name of party/amicus)

Director of the Division of Certificate of Public Need,

who is _____ Appellee _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Earle Duncan Getchell, Jr.        Date:    10/24/2012

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on ___10/24/2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Earle Duncan Getchell, Jr.                    10/24/2012
        (signature)                                  (date)

07/19/2012
SCC
- 2 -

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................ii

STATEMENT OF THE ISSUES ......................................... 1

STATEMENT OF THE CASE............................................ 1

STATEMENT OF FACTS .................................................. 5

SUMMARY OF ARGUMENT ........................................... 20

ARGUMENT...................................................................... 21

   I.  The District Court Rightly Dismissed Plaintiffs' Dormant Commerce Clause Claims......................................... 26

      A.  Virginia's COPN laws do not discriminate against interstate commerce, as they are facially neutral, have a plain and legitimate public purpose, and have not been plausibly alleged to impose any burdens on out-of-state interests that they do not visit equally upon in-state interests..................................................29

      B.  The District Court rightly held that no plausible non-conclusory allegation had been pled that any burdens imposed on interstate commerce by Virginia's COPN law were clearly excessive in light of the putative local benefit of reduced medical costs........................................36

   II. The District Court Rightly Dismissed Plaintiffs' Due Process And Equal Protection Claims Because the COPN Laws Are Reasonably Related to the Advancement of the Commonwealth's Interest in Reducing the Cost of Health Care in the Commonwealth and Ensuring Access. .......................... 47

   III.The District Court Rightly Dismissed Plaintiffs' Equal Protection Claim Relating to the Exemption of Nuclear Cardiac Imaging. ...................................................... 51

CONCLUSION ................................................................55

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................56

CERTIFICATE OF SERVICE...........................................57

i

# TABLE OF AUTHORITIES

Page

### *Cases*

*Armour v. City of Indianapolis,*
132 S. Ct. 2073 (2012) ................................................. 24, 48, 51, 52

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................... 29

*Aziz v. Alcolac, Inc.,*
658 F.3d 388 (4th Cir. 2011) ............................................ 21

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................... 47

*Bibb v. Navajo Freight Lines,*
359 U.S. 520 (1959) ........................................................... 41

*Brown v. Hovatter,*
561 F.3d 357 (4th Cir. 2009) ........................................ 23, 28, 29, 41

*Burnette v. Fahey,*
687 F.3d 171 (4th Cir. 2012) ............................................ 21

*Carmichael v. S. Coal & Coke Co.,*
301 U.S. 495 (1937) ........................................................... 55

*Chambers Med'l Techns. v. Bryant,*
52 F.3d 1252 (4th Cir. 1995) ...................................... 30, 31, 41, 42

*CTS Corp. v. Dynamics Corp. of Am.,*
481 U.S. 69 (1987) ....................................................... 26, 40, 41

*Dennis v. Higgins,*
498 U.S. 439 (1991) ........................................................... 27

*Dep't of Revenue of Ky. v. Davis,*
553 U.S. 328 (2008) ....................................................... 27, 38, 39

*FCC v. Beach Commc'ns, Inc.,*
508 U.S. 307 (1993) ................................................... 24, 25, 53, 54

*Florida ex rel. Att'y Gen. v. HHS,*
648 F.3d 1235 (11th Cir. 2011) ........................................ 24

*Fresenius Med'l Care Holdings, Inc. v. Tucker*,
704 F.3d 935 (11th Cir. 2013) ............................................... 31, 50, 51

*H.P. Hood & Sons, Inc. v. Du Mond*,
336 U.S. 525 (1949) ............................................................. 29

*Heller v. Doe*,
509 U.S. 312 (1993) ................................................. 48, 51, 52

*Holland v. Keenan Trucking Co.*,
102 F.3d 736 (4th Cir. 1996) ............................................ 48

*JH v. Henrico Cnty. Sch. Bd.*,
326 F.3d 560 (4th Cir. 2003) ........................................... 21

*Lehnhausen v. Lake Shore Auto Parts Co.*,
410 U.S. 356 (1973) ........................................................... 55

*Lewis v. BT Inv. Managers, Inc.*,
447 U.S. 27, 36 (1980) ...................................................... 31

*Lochner v. New York*,
198 U.S. 45 (1905) ............................................... 22, 23, 26

*Locke v. Shore*,
634 F.3d 1185 (11th Cir. 2011) ....................................... 33

*McBurney v. Young*,
667 F.3d 454 (4th Cir. 2012) .................................... 27, 30

*McMahan v. Int'l Ass'n of Bridge*,
964 F.2d 1462 (4th Cir. 1992) ......................................... 21

*Md. Port Admin. v. Premier Auto. Servs.*,
492 F.3d 274 (4th Cir. 2007) .................................... 23, 51

*Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*,
985 F.2d 164 (4th Cir. 1993) ............................... 45, 46, 47

*Minnesota v. Clover Leaf Creamery Co.*,
449 U.S. 456 (1981) ............................... 30, 52, 53, 54

*Nat'l Fed. of Indep. Bus. v. Sebelius*,
132 S. Ct. 2566 (2012) ............................................. 24, 25

*Nat'l Gerimed'l Hosp. & Gerontology Ctr. v. Blue Cross of K.C.*,
452 U.S. 378 (1981) ........................................................ 30

iii

*New Orleans v. Dukes,*
427 U.S. 297 (1976) ................................................................. 53, 54

*Nordlinger v. Hahn,*
505 U.S. 1 (1992) ............................................................................. 52

*Nw. Cent. Pipeline Corp. v. State Corp. Comm'n,*
489 U.S. 493 (1989) .......................................................................... 38

*Oregon Waste Sys. v. Oregon Dep't of Envtl. Quality,*
511 U.S. 93 (1994) ..................................................................... 27, 28

*Panhandle E. Pipe Line Co. v. Mich. Pub. Serv. Comm'n,*
341 U.S. 329 (1951) .......................................................................... 47

*Pike v. Bruce Church, Inc.,*
397 U.S. 137 (1970) .............................................................. 28, 37, 39

*Sorrell v. IMS Health Inc.,*
131 S. Ct. 2653 (2011) ...................................................................... 22

*Star Scientific, Inc. v. Beales,*
278 F.3d 339 (4th Cir. 2002) ............................................................ 48

*U.S. R.R. Retirement Bd. v. Fritz,*
449 U.S. 166 (1980) ..................................................................... 52, 54

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
550 U.S. 330 (2007) .............................................................. 26, 38, 55

*United States v. Carolene Prods. Co.,*
304 U.S. 144, 152 (1938) .................................................................. 48

*Vance v. Bradley,*
440 U.S. 93 .................................................................................. 25, 52

*W. Lynn Creamery, Inc. v. Healy,*
512 U.S. 186 (1994) .......................................................................... 36

*Walgreen Co. v. Rullan,*
405 F.3d 50 (1st Cir. 2005) .................................................. 33, 34, 36

*Washington v. Glucksberg,*
521 U.S. 702 (1997) .......................................................................... 24

*Williamson v. Lee Optical of Okla., Inc.,*
348 U.S. 483 (1955) .......................................................................... 23

iv

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*,
  654 F.3d 919 (9th Cir. 2011) ................................................ 30, 41, 49

*Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*,
  401 F.3d 560 (4th Cir. 2005) ................................... 36, 38, 40, 43, 44

### Statutes

Va. Code Ann. § 32.1-02.2(A)(4) ........................................... 10

Va. Code Ann. § 32.1-102.1 ....................................... 2, 7, 8, 10, 12, 51

Va. Code Ann. § 32.1-102.1(1) - (11) ...................................... 6

Va. Code Ann. § 32.1-102.1(i) - (vii) ...................................... 7

Va. Code Ann. § 32.1-102.1:1 ............................................. 11

Va. Code Ann. § 32.1-102.11(A) ........................................... 2

Va. Code Ann. § 32.1-102.2(A) ............................................ 11

Va. Code Ann. § 32.1-102.2(A)(1) ......................................... 12

Va. Code Ann. § 32.1-102.2(A)(3) .................................... 11, 30, 32, 54

Va. Code Ann. § 32.1-102.2:1 ............................................. 10

Va. Code Ann. § 32.1-102.3(A) ........................................... 2, 5

Va. Code Ann. § 32.1-102.3(B) ............................................ 3

Va. Code Ann. § 32.1-102.3(B)(1) - (8) .................................. 10

Va. Code Ann. § 32.1-102.3(B)(4) ........................................ 32

Va. Code Ann. § 32.1-102.3:2(B) .......................................... 3

Va. Code Ann. § 32.1-102.4(C) ........................................... 16

Va. Code Ann. § 32.1-102.4(E) ........................................... 16

Va. Code Ann. § 32.1-102.4(F) ........................................... 16

Va. Code Ann. § 32.1-102.5 .............................................. 15

Va. Code Ann. § 32.1-102.6 ............................................. 3, 12

Va. Code Ann. § 32.1-102.6(A) ........................................... 12

Va. Code Ann. § 32.1-102.6(B) ..................................... 12, 13, 35

Va. Code Ann. § 32.1-102.6(C) ........................................... 35

Va. Code Ann. § 32.1-102.6(D) ..................................... 12, 15, 35

Va. Code Ann. § 32.1-102.6(E) ................................................ 14

Va. Code Ann. § 32.1-102.6(E)(4) ........................................... 14

Va. Code Ann. § 32.1-102.6(E)(5) ........................................... 15

Va. Code Ann. § 32.1-102.6(E)(7) ........................................... 15

Va. Code Ann. § 32.1-102.6(F) .......................................... 15, 35

Va. Code Ann. § 32.1-102.6(G) .......................................... 14, 35

Va. Code Ann. § 32.1-102.6(J) ............................................... 12

Va. Code Ann. § 32.1-102.8 .................................................. 16

Va. Code Ann. § 32.1-24 ...................................................... 15

Va. Code Ann. § 32.1-27(A) .................................................. 16

Va. Code Ann. § 32.1-27(C) .................................................. 16

Va. Code Ann. § 32.1-27(D) .................................................. 16

Va. Code Ann. § 32.1-27.1(A) ................................................ 16

Va. Code Ann. § 5-230-150 ................................................... 11

Va. Code Ann. § 5-230-160 ................................................... 11

Va. Code Ann. § 5-230-170 ................................................... 11

Va. Code Ann. § 5-230-260 ................................................... 11

Va. Code Ann. §§ 2.2-4000 though -4031 ................................ 15

Va. Code Ann. §§ 32.1-102.1 through -102.11 ............................. 1

12 Va. Admin Code § 5-220-450 ........................................... 15

12 Va. Admin. Code § 5-220-160 ...................................... 10, 11

12 Va. Admin. Code § 5-220-180 ........................................... 12

12 Va. Admin. Code § 5-220-200 ........................................... 12

12 Va. Admin. Code § 5-220-220 ........................................... 12

12 Va. Admin. Code § 5-220-230(A) .................................. 13, 14

12 Va. Admin. Code § 5-220-230(B) ............................. 12, 13, 15

12 Va. Admin. Code § 5-220-230(C) ....................................... 15

12 Va. Admin. Code § 5-220-240 ........................................... 13

12 Va. Admin. Code § 5-220-280 ...................................................... 12

12 Va. Admin. Code § 5-220-300 ...................................................... 13

12 Va. Admin. Code § 5-220-430 ...................................................... 15

12 Va. Admin. Code § 5-220-440 ...................................................... 15

12 Va. Admin. Code § 5-220-460 ...................................................... 16

12 Va. Admin. Code § 5-230-100 ...................................................... 11

12 Va. Admin. Code § 5-230-100(A) .................................................. 3

12 Va. Admin. Code § 5-230-110 ...................................................... 11

12 Va. Admin. Code § 5-230-120 ...................................................... 11

12 Va. Admin. Code § 5-230-150 ........................................................ 3

12 Va. Admin. Code § 5-230-30 ................................................. 32, 48

12 Va. Admin. Code § 5-230-40 (B) .................................................. 11

12 Va. Admin. Code § 5-230-40(A) ............................................... 3, 11

12 Va. Admin. Code §§ 5-220-10 through 5-220-490 ........................... 1

12 Va. Admin. Code § 5-230-30(1) - (5) ........................................ 3, 30

12 Va. Admin. Code §§ 5-220-170 through -270 ................................ 12

## *Other Authorities*

Merriam-Webster's Coll. Dictionary 948 (10th ed. 2001) .................. 37

Va. Dep't of Health, 2011 Annual Report on the Status of Virginia's
    Medical Care Facilities Certificate of Public Need Program, at 1,
    http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD712012/$file/RD
    71.pdf ................................................................................... 50

Va. Dep't of Health, 2011 Annual Report on the Status of Virginia's
    Medical Care Facilities Certificate of Public Need Program, at 8,
    http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD712012/$file/RD
    71.pdf ..................................................................................... 5

Va. Dep't of Health, 2011 Annual Report on the Status of Virginia's
    Medical Care Facilities Certificate of Public Need Program, at iii,
    http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD712012/$file/RD
    71.pdf ................................................................................... 42

Virginia Attorney General Kenneth T. Cuccinelli, II, on behalf of the defendants below, in their official capacities, submits this Brief of Appellees.

## STATEMENT OF THE ISSUES

1. Whether the Plaintiffs failed to allege a plausible claim that Virginia's certificate of need laws discriminated against or otherwise unjustifiably burdened interstate commerce.

2. Whether the Plaintiffs failed to allege a plausible claim that Virginia's certificate of need laws fail the rational basis test under the Equal Protection and Due Process of Law clauses.[1]

## STATEMENT OF THE CASE

Plaintiffs Colon Health Centers of America, LLC ("Colon Health"), and Washington Imaging Associates-Maryland, LLC, d/b/a Progressive Radiology ("Progressive Radiology"), medical firms operating in other States on the Atlantic coast, filed a complaint affirming their desire to do business in Virginia and their lack of interest in complying with Virginia's Medical Care Facilities Certificate of Public Need ("COPN") process.  *See* Va. Code Ann. §§ 32.1-102.1 through -102.11; 12 Va. Admin. Code §§ 5-220-10 through 5-220-490; 12 Va. Admin. Code §§ 5-230-10 through 5-230-1000.    Instead,    they    challenged    the

---

[1] The Appellees follow Appellants in not listing Colon Health and Progressive Radiology's Privileges or Immunities claim as an issue presented in this appeal.  (Doc. 40-1 at 2.)

constitutionality of those provisions. (JA 9-12, 17-18.) As explained in greater detail below, the challenged COPN statutes and regulations require all persons who seek to "commence any project" in Virginia--with project being defined to include most capital expenditures on medical equipment or facilities, Va. Code Ann. § 32.1-102.1,--to first show "a public need" for the same. Va. Code Ann. § 32.1-102.3(A); *see* Va. Code Ann. § 32.1-102.11(A) ("On and after July 1, 1992, every project of an existing or proposed medical care facility, as defined in § 32.1-102.1, shall be subject to all provisions of this article . . .").

"The COPN program is based on the understanding that excess capacity or underutilization of medical facilities are detrimental to both cost effectiveness and quality of medical services in Virginia." It "seeks the geographical distribution of medical facilities and to promote the availability and accessibility of proven technologies;" "to promote the development and maintenance of services and access to those services by every person who needs them without respect to their ability to pay;" "to encourage the conversion of facilities to new and efficient uses and the reallocation of resources to meet evolving community needs;" and to "discourage[] the proliferation of services that would undermine the

ability of essential community providers to maintain their financial viability."  12 Va. Admin. Code § 5-230-30(1) - (5); (JA 29, 133).  Colon Health and Progressive Radiology brought suit in the Eastern District of Virginia against the Secretary of Health and Human Resources, the fifteen members of the Virginia State Board of Health ("the Board"), the Virginia State Health Commissioner ("the Commissioner"), the Acting Director of the Office of Licensure and Certification and Director of the Division of Certificate of Public Need, and the Executive Director of the Health Systems Agency for Northern Virginia (collectively, "the State Health Officials").  (JA 12-16.)  These State Health Officials are charged with determining whether the requisite showing has been made, and are charged with consulting certain statutory and regulatory criteria.  *See* Va. Code Ann. §§ 32.1-102.3(B), -102.6, & 102.3:2(B); *see also* 12 Va. Admin. Code § 5-230-40(A) (additional regulatory criteria); *id.*, § 5-230-150 (new Magnetic Resonance Imaging ("MRI") services); *id.*, § 5-230-100(A) (new Computed Tomography ("CT") services); (JA 13, 16).

Colon Health and Progressive Radiology claim that these commonplace restrictions, which currently obtain in 35 other States, (JA 27, 29), violate the dormant Commerce Clause, as well as the

3

Fourteenth Amendment's Equal Protection and Due Process clauses. (JA 42-47.)  Colon Health and Progressive Radiology allege in conclusory terms that "the [COPN] program exists for no reason beyond protecting established businesses from competition."  (JA 9; 29.) Furthermore, because of the COPN laws, they allege that they have foregone operating in Virginia due to the regulatory burden of demonstrating a public need.  They say they are not optimistic about their prospects were they to attempt to make this showing, that they are unwilling to attempt to try, and that requiring them to do so is unconstitutional.  (JA 9.)  Colon Health and Progressive Radiology thus sought declarations of unconstitutionality from the district court as well as a permanent injunction against enforcement.  (JA 47-48.)

The State Health Officials joined issue with Plaintiffs' constitutional analysis in their motion to dismiss, (JA 50-74), which, following oral argument, (JA 105-22), the district court granted as to all counts.  (JA 148.)  In its September 14, 2012 opinion, the district court analyzed and rejected each of Colon Health and Progressive Radiology's claims of unconstitutionality as insufficient as a matter of law.  (JA 123,

134-35, 137-40, 141, 143-44, 146-47, 148.)  The Plaintiffs' timely Notice of Appeal followed on October 11, 2012.  (JA 149-50.)

## STATEMENT OF FACTS

Although Colon Health and Progressive Radiology understandably frame their recitation of the Virginia law as though it were meant to apply specifically to them, the COPN statutes are no respecter of persons, but operate evenhandedly on all who seek to make major capital expenditures on most, although not all, medical equipment or facilities in Virginia, regardless of the provenance of the equipment or its owner.

Virginia Code Annotated § 32.1-102.3(A) provides that "[n]o person shall commence any project without first obtaining a certificate issued by the Commissioner" and that "[n]o certificate may be issued unless the Commissioner has determined that a public need for the project has been demonstrated."  Although revised, repealed, and readopted over the years by the General Assembly,[2] the restriction

---

[2] *See* Va. Dep't of Health, 2011 Annual Report on the Status of Virginia's Medical Care Facilities Certificate of Public Need Program, at                                                                                                  8, http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD712012/$file/RD71.pdf.

5

presently embraces nearly the entire universe of capital expenditures

on medical facilities and equipment, including "the following medical

care facilities[:]

> General hospitals[;] Sanitariums[;] Nursing homes[;] Intermediate care facilities, [with certain limited exceptions;] Extended care facilities[;] Mental hospitals[;] Facilities for individuals with intellectual disability[;] Psychiatric hospitals and intermediate care facilities established primarily for the medical, psychiatric or psychological treatment and rehabilitation of individuals with substance abuse[;] Specialized centers or clinics or that portion of a physician's office developed for the provision of outpatient or ambulatory surgery, cardiac catheterization, computed tomographic (CT) scanning, stereotactic radiosurgery, lithotripsy, magnetic resonance imaging (MRI), magnetic source imaging (MSI), positron emission tomographic (PET) scanning, radiation therapy, stereotactic radiotherapy, proton beam therapy, nuclear medicine imaging, except for the purpose of nuclear cardiac imaging, or such other specialty services as may be designated by the Board by regulation[;] Rehabilitation hospitals[; and] Any facility licensed as a hospital.

Va. Code Ann. § 32.1-102.1(1) - (11) (defining "medical care facilities . . .

subject to review"). Physician's offices, including that "portion . . . office

dedicated to providing nuclear cardiac imaging," certain facilities

operated by the Commonwealth, and facilities treating substance abuse

and intellectual disabilities are expressly excluded from the definition. Va. Code Ann. § 32.1-102.1(i) - (vii).

Whether or not something is a "medical care facility," as defined by the foregoing provision, is significant because whether or not an undertaking is a "project," and so subject to the requirement of obtaining a certificate of public need, often depends on its relationship to a medical care facility.  "Projects" are defined to include "[t]he [e]stablishment of a medical care facility," "[a]n increase in the total number of beds or operating rooms in an existing medical care facility," the "[r]elocation of beds from one existing facility to another" of a significant enough number in a specified period of time, and the "[c]onversion of beds in an existing medical care facility to medical rehabilitation beds or psychiatric beds" or "[c]onversion in an existing medical care facility of psychiatric inpatient beds approved pursuant to a Request for Applications (RFA) to nonpsychiatric inpatient beds."  Va. Code Ann. § 32.1-102.1 (defining "project").

Most significantly for this case, projects include the equipment sought to be used by Colon Health and Progressive Radiology.  Va. Code

7

Ann. § 32.1-102.1.  However, the "[r]eplacement of existing equipment shall not require a certificate of public need."  *Id.*

In short, both Colon Health, and any competitor it might have in Virginia, when utilizing a CT scanner, are required to obtain a certificate of public need before purchasing or deploying it in Virginia. Likewise, both Progressive Radiology, and any competitor it might have in Virginia, when utilizing an MRI scanner are required to obtain a certificate of public need before purchasing or deploying it in Virginia. The Plaintiffs plead as much when they cite Progressive Radiology's "experience in trying to obtain a certificate of need to purchase a second MRI scanner in an existing facility."  (JA 42.)  And it is plain from the face of the statute, and not contradicted by the Plaintiffs, that this requirement holds regardless of whether equipment is purchased in Virginia or is brought in from elsewhere and applies without regard to citizenship or place of residence of the owner.

Whether anyone has demonstrated "a public need for the project" depends upon the determination of the State Health Commissioner based upon consideration of the following factors:

> 1. The extent to which the proposed service or facility will provide or increase access to needed services for residents of

the area to be served, and the effects that the proposed service or facility will have on access to needed services in areas having distinct and unique geographic, socioeconomic, cultural, transportation, and other barriers to access to care;

2. The extent to which the project will meet the needs of the residents of the area to be served, as demonstrated by each of the following: (i) the level of community support for the project demonstrated by citizens, businesses, and governmental leaders representing the area to be served; (ii) the availability of reasonable alternatives to the proposed service or facility that would meet the needs of the population in a less costly, more efficient, or more effective manner; (iii) any recommendation or report of the regional health planning agency regarding an application for a certificate that is required to be submitted to the Commissioner pursuant to subsection B of § 32.1-102.6; (iv) any costs and benefits of the project; (v) the financial accessibility of the project to the residents of the area to be served, including indigent residents; and (vi) at the discretion of the Commissioner, any other factors as may be relevant to the determination of public need for a project;

3. The extent to which the application is consistent with the State Medical Facilities Plan;

4. The extent to which the proposed service or facility fosters institutional competition that benefits the area to be served while improving access to essential health care services for all persons in the area to be served;

5. The relationship of the project to the existing health care system of the area to be served, including the utilization and efficiency of existing services or facilities;

6. The feasibility of the project, including the financial benefits of the project to the applicant, the cost of

construction, the availability of financial and human resources, and the cost of capital;

7. The extent to which the project provides improvements or innovations in the financing and delivery of health services, as demonstrated by: (i) the introduction of new technology that promotes quality, cost effectiveness, or both in the delivery of health care services; (ii) the potential for provision of services on an outpatient basis; (iii) any cooperative efforts to meet regional health care needs; and (iv) at the discretion of the Commissioner, any other factors as may be appropriate; and

8. In the case of a project proposed by or affecting a teaching hospital associated with a public institution of higher education or a medical school in the area to be served, (i) the unique research, training, and clinical mission of the teaching hospital or medical school, and (ii) any contribution the teaching hospital or medical school may provide in the delivery, innovation, and improvement of health care for citizens of the Commonwealth, including indigent or underserved populations.

Va. Code Ann. § 32.1-102.3(B)(1) - (8); *see id.*, § 32.1-102.2(A)(4) (authorizing the Board to establish consistent regulations, including additional criteria "for determining need in rural areas"); *see* 12 Va. Admin. Code § 5-220-160 (requiring compliance with Va. Code Ann. § 32.1-102.2:1, which requires consideration of the State Medical Facilities Plan, 12 Va. Admin. Code §§ 5-230-10 through 5-230-1000); *cf.* Va. Code Ann. § 32.1-102.1(defining "State Medical Facilities Plan").

10

The Board requires any applicant seeking a certificate of need to produce documentation "in their application that their project addresses" these factors and to prove "that the project is consistent with the applicable requirements and review policies." 12 Va. Admin. Code § 5-230-40(A) and (B). The Board has been granted and has exercised delegated authority to provide additional objective criteria. *See* Va. Code Ann. § 32.1-102.2(A); *see also* 12 Va. Admin. Code § 5-220-160; *see, e.g.*, 12 Va. Admin. Code §§ 5-230-100, -110, & -120 (CT services); *id.*, §§ 5-230-150, -160, & -170 (MRI services); *id.*, § 5-230-260 (Noncardiac nuclear imaging services). And the Board is permitted by statute to "provide for exempting from the requirement of a certificate projects determined by the Commissioner, upon application for exemption, to be subject to the economic forces of a competitive market or to have no discernible impact on the cost or quality of health services." Va. Code Ann. § 32.1-102.2(A)(3). Finally, Virginia's COPN law requires that the purchaser of "any medical equipment" for certain listed purposes, including "computed tomographic (CT) scanning" or "magnetic resonance imaging," to register them within thirty days of contracting. Va. Code Ann. § 32.1-102.1:1; (JA 30-31).

11

The particulars of the application and review process are set forth in Va. Code Ann. § 32.1-102.6, and further delineated in 12 Va. Admin. Code §§ 5-220-170 through -270. The review process lasts 190-days from filing of a completed application with the State Board of Health and the appropriate regional planning facility, Va. Code Ann. § 32.1-102.6(A), (B) & (D); 12 Va. Admin. Code § 5-220-230(B), although there may be some variation based on where the filing occurs within the cycle of review for that type of project. Va. Code Ann. § 32.1-102.6(A) & (B), *see* Va. Code Ann. § 32.1-102.1; Va. Code Ann. § 32.1-102.2(A)(1); 12 Va. Admin. Code §§ 5-220-180; -200 & -230(B).

Applications for CT scanning and MRI equipment are considered together "in the radiation therapy batch" of applications for certificates, Va. Code Ann. § 32.1-102.2(A)(1); 12 Va. Admin. Code § 5-220-200, which ensures that applications to provide these services are "considered as competing applications by the [C]ommissioner," unless the Commissioner elects to "waive the review schedule requirements," 12 Va. Admin. Code § 5-220-220, or the project is of the type that receives "expedited review." Va. Code Ann. § 32.1-102.6(J); 12 Va. Admin. Code § 5-220-280.

12

Once the review process has begun, the appropriate regional health planning agency has 60 days to complete the initial review of the applications and to hold a public hearing near the site of the proposed project to receive comments from local governing bodies and the public. Va. Code Ann. § 32.1-102.6(B); 12 Va. Admin. Code § 5-220-230(A). "Any person affected by a proposed project under review may directly submit written opinions, data and other information to the appropriate regional health planning agency and the commissioner for consideration prior to their final action." 12 Va. Admin. Code § 5-220-240; *see also id.*, § 5-220-300. Applicants may respond to public comments, and the regional health planning agency must then, within 10 days following the close of the 60-day review period, provide the Department "its recommendation on each application and its reasons therefor," Va. Code Ann. § 32.1-102.6(B); *see* 12 Va. Admin. Code § 5-220-230(A), or the Department will take their silence as an unconditional recommendation. Va. Code Ann. § 32.1-102.6(B); *see* 12 Va. Admin. Code § 5-220-230(B). Within 10 days, the Department must complete its review and transmit its recommendation to the applicant and, within 5 more days, communicate to the applicant its determination

13

"whether an informal fact-finding conference is necessary."  Va. Code Ann. § 32.1-102.6(E); 12 Va. Admin. Code § 5-220-230(A).

An informal fact-finding conference will be held if either the Department deems it necessary or if one is requested by a person who has submitted under oath grounds that give the person "good cause" for being made party to the process.  Va. Code Ann. § 32.1-102.6(E); 12 Va. Admin. Code § 5-220-230(A).  "Good cause" exists when it is shown "that (i) there is significant, relevant information not previously presented at and not available at the time of the public hearing, (ii) there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or (iii) there is a substantial material mistake of fact or law in the department staff's report on the application or in the report submitted by the regional health planning agency."  Va. Code Ann. § 32.1-102.6(G); 12 Va. Admin. Code § 5-220-230(A).  If an informal fact-finding conference is held, the record on the application must be closed within "30 calendar days after the date for holding the informal fact-finding conference."  Va. Code Ann. § 32.1-102.6(E)(4).

If no conference is held, the record "shall be closed on the earlier of (i) the date established for holding the informal fact-finding conference or (ii) the date that the Department determines an informal fact-finding conference is not necessary." Va. Code Ann. § 32.1-102.6(E)(5); 12 Va. Admin. Code § 5-220-230(B). The date the record closes is significant: "In any case when a determination whether a public need exists for a project is not made by the Commissioner within 70 calendar days after the closing of the record, the application shall be deemed to be approved and the certificate shall be granted." Va. Code Ann. § 32.1-102.6(E)(7); 12 Va. Admin. Code § 5-220-230(C).

Whether issued upon an express finding of public need or simply "deemed to be approved," the certificate's issuance (or denial) may be appealed, Va. Code Ann. §§ 2.2-4000 though -4031, by either the applicant or a person made a party for good cause. *See* Va. Code Ann. § 32.1-102.6(D) & (F); *see also id.*, § 32.1-24. Once issued, a certificate is valid for 12 months and is non-transferrable, Va. Code § Ann. 32.1-102.5; 12 Va. Admin. Code § 5-220-430, but may be extended indefinitely "when satisfactory completion of a project has been demonstrated." 12 Va. Admin. Code § 5-220-440; *see id.*, § 5-220-450.

15

However, a certificate also may be revoked for a number of reasons. *See* Va. Code Ann. § 32.1-102.4(C); 12 Va. Admin. Code § 5-220-460. And the State Health Commissioner, State Board of Health, or the Attorney General of Virginia may apply to a circuit court to enjoin a project "undertaken or commenced without a certificate" from continuing or operating. Va. Code Ann. § 32.1-102.8. A willful violation of the certificate of need requirement may be subject to civil penalties and fines. *See* Va. Code Ann. § 32.1-102.4(E) & (F); Va. Code Ann. § 32.1-27(A), (C), & (D); Va. Code Ann. § 32.1-27.1(A).

The particularized allegations relevant to the Plaintiffs' challenge of this regulatory program are as follows. Colon Health is registered as an LLC and provides "colon-cancer screening and treatment" in Delaware, although its President/CEO resides in Pennsylvania. (JA 11, 17, 24.) Progressive Radiology, the trade name of Washington Imaging Associates, is registered as an LLC in Maryland and primarily provides its "medical imaging" services there, although it also provides those services from an office in the District of Columbia. (JA 11-12, 17.) "Virginia requires Plaintiffs to obtain a certificate of need to buy the medical imaging equipment they would need," a "Computed

16

Tomography (CT[]) scanner" in the case of Colon Health and a magnetic resonance imaging ("MRI") scanner in the case of Progressive Radiology, "before opening new facilities in Virginia." (JA 17, 18, 20-21, 24, 26.)

Both Plaintiffs refuse to apply for certificates. (JA 35.) According to the Plaintiffs, the COPN requirement causes them to forego entering the marketplace for their services in Virginia, and so causes them also to "not import[] goods, like MRI machines or CT scanners, into Virginia through interstate commerce." (JA 9, 41-42.) Progressive Radiology alleges that, were it not for the requirement that it first obtain a certificate, it would "open a Virginia office, purchase at least one new MRI scanner in interstate commerce, and install it in a suitable medical office leased in Fairfax County." (JA 39.) The Plaintiffs explain their refusal to seek certificates on the ground that the application process is "difficult and time-consuming," "can take six to seven months to complete," and, "[i]f an informal fact-finding conference is requested by any person, [may take] significantly longer." (JA 9, 18, 31-32, 34, 38, 40.) The Plaintiffs fear the worst, citing past experience, (JA 37, 39) and allege that entities with "an economic interest in preventing the

17

certificate of need from being granted" can delay the process. For example, they claim that "fact-finding conferences are almost exclusively requested by entities that would be in economic competition with the entity" seeking a certificate. (JA 34-35.)

In support of their constitutional claims, the Plaintiffs further allege that "an interstate market for the sale of imaging technology" exists, including for MRI and CT scanners, that most such equipment is "manufactured outside of Virginia," and that the COPN laws thus "substantially burden[s] or restrict[s]" "the flow of those goods into Virginia." (JA 43.) And they allege that there is also an interstate market for "colon-cancer screening and treatment and radiology services" and that the COPN laws prevent them and others similarly situated "from offering their independent services" by imposing significant cost, delay, and uncertainty upon their entry into the Virginia market. (JA 43-44.) With regard to their equal protection claim, the Plaintiffs allege that the Commonwealth "treats similar medical services [and equipment] differently" without reason, requiring a certificate for theirs and for others, but not requiring one for "nuclear cardiac imaging." (JA 45.)

18

Employing language that is purely conclusory, Colon Health and Progressive Radiology allege that the COPN laws have the purpose and effect of "discriminating against out-of-state businesses in favor of in-state businesses" and also place "substantial burdens on interstate commerce . . . that are not justified by local benefits," alleging that there are none. (JA 44.)  The Plaintiffs make the conclusory claim that the COPN laws are aimed at "protecting in-state businesses from competition," which they contend "is not a legitimate state interest." (JA 44.)  The Plaintiffs also claim in conclusory fashion that the COPN laws violate the Privilege or Immunities, Equal Protection, and Due Process guarantees because they are supposedly irrational and "arbitrary," burdening the "right to earn a living" and advancing no "legitimate state interest," (JA 45-47), other than "[i]nstate economic protectionism" for "established Virginia healthcare businesses," which "is not a legitimate state interest." (JA 46.)  Finally, the Plaintiffs claim that the exemption of nuclear cardiac imaging from COPN requirements is also irrational because there is no reason that those services and equipment should be exempt that does not "apply equally

to other kinds of nuclear imaging or other kinds of medical imaging."
(JA 45.)

## SUMMARY OF ARGUMENT

The putative local benefit of the COPN program is reduced medical costs and increased access for all. The claimed burden is fewer equipment sales in Virginia. It is sufficient merely to state the benefit and burden to demonstrate that the chosen balance is reasonable under a *Bruce Church* analysis. And despite conclusory allegations to the contrary, the program is neutral on its face and therefore lacks discriminatory intent. It also is neutral in its effect because in-state or extra-territorial ownership confers no benefit on either form of economic interest. Hence, no plausible dormant Commerce Clause claim has been pled.

Since 1937 economic regulations have been subject to rational basis review. Because the economic theory underlying the regulation is rational, it is not subject to judicial veto. Hence, no Due Process or Equal Protection Clause claim has been plausibly pled.[3]

---

[3] The State Health Officials agree that Colon Health and Progressive Radiology's claim that the COPN laws violate their Fourteenth Amendment privileges or immunities is foreclosed by Supreme Court case law, and thus was also rightly dismissed. (Doc. 40-1 at 52.)

20

# ARGUMENT

This court reviews the district court's determination that the Plaintiffs failed to state a claim upon which relief may be granted de novo, "accept[ing] the truthfulness of all factual allegations, [but] not assuming the veracity of 'bare legal conclusions.'" *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012), *reh'g en banc denied*, 699 F.3d 804, 805 (quoting *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)). This Court may affirm a judgment for the reasons stated by the district court or for any reason appearing from the record. *McMahan v. Int'l Ass'n of Bridge*, 964 F.2d 1462, 1467 (4th Cir. 1992); *see JH v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 567 (4th Cir. 2003) ("[T]he prevailing party may present any argument that supports the judgment in its favor as long as the acceptance of the argument would not lead to a reversal or modification of the judgment rather than an affirmance." (quotation marks and citation omitted)). Accordingly, as Appellants concede, (Doc. 40-1 at 17), the fact that the district court's opinion tracks much of the language of the defendants' briefing below has no bearing on this Court's resolution of their appeal.

21

Before proceeding to rebut the particular arguments made by Colon Health and Progressive Radiology in claiming that the district court improperly dismissed their claims, recurrence to fundamental principles is in order. The Supreme Court of the United States has rejected, expressly and repeatedly, the contention that the United States Constitution enshrines a particular economic theory or permits federal courts to second guess economic regulations based upon differing views of the facts on the ground or the causal connection existing between the means chosen and the ends desired. *See Lochner v. New York*, 198 U.S. 45, 75-76 (1905) (Holmes, J., dissenting) ("[A] constitution is not intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the State or of laissez faire. It is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar or novel and even shocking ought not to conclude our judgment upon the question whether statutes embodying them conflict with the Constitution of the United States."); *accord Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2665 (2011) ("The Constitution 'does not enact Mr.

Herbert Spencer's Social Statics.'" (quoting *Lochner*, 198 U.S. at 75 (Holmes, J., dissenting)).

It is as true today as in 1955 that "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business . . . , because they may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1955); *accord Brown v. Hovatter*, 561 F.3d 357, 369 (4th Cir. 2009); *cf. Md. Port Admin. v. Premier Auto. Servs.*, 492 F.3d 274, 283 (4th Cir. 2007) ("The recognition of such a broad right to do business, would be akin to that [recognized] in *Lochner v. New York*, 198 U.S. 45 (1905), and its progeny, which the Supreme Court has long since refused to recognize.").

Under these well-established precepts "where 'ordinary commercial transactions' are at issue, rational basis review requires deference to reasonable underlying legislative judgments," whether the challenge is one claiming a denial of substantive due process[4] or of

---

[4] "[S]ubstantive due process protects only a small class of fundamental rights, including 'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily

equal protection of the laws. *See Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012). "This standard of review is a paradigm of judicial restraint." *FCC v. Beach Comm'ns, Inc.*, 508 U.S. 307, 314 (1993). One of the features of this standard is that by "requiring [only] a reasonable relation to a legitimate state interest to justify the action, [rational basis review] avoids the need for complex balancing of competing interests in every case." *Washington v. Glucksberg*, 521 U.S. 702, 722, 735 (1997) ("We need not weigh exactingly the relative strengths of these various interests. They are unquestionably important and legitimate, and Washington's [law] is at least reasonably related to their promotion and protection.").

The Plaintiffs do not claim that reducing health care costs and ensuring access to medical services, the express aims of Virginia's COPN laws, are not legitimate state interests. *See Florida ex rel. Att'y Gen. v. HHS*, 648 F.3d 1235, 1363 (11th Cir. 2011), *rev'd on other grounds*, *Nat'l Fed. of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012). Instead, they claim that the means chosen do not lead to the desired

---

integrity, and to abortion,'" but provides only "rational basis review" for "economic regulations." *Florida ex rel. Att'y Gen. v. HHS*, 648 F.3d 1235, 1362-63 (11th Cir. 2011) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

result; at least not as well as the free market would do. But they simply are not entitled to judicially challenge the economic theory rationally held by the legislature. *See Beach Communications*, 508 U.S. at 314 ("'The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.'" (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)); *accord National Federation*, 132 S. Ct. 2579 (affirming that federal judges "are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our Nation's elected leaders, who can be thrown out of office if the people disagree with them. It is not our job to protect the people from the consequences of their political choices.").

Although not perhaps as deferential as rational basis review, *Bruce Church* review is nonetheless quite deferential with respect to the relation between the means and ends chosen by the legislature. "There is a common thread to these arguments: They are invitations to rigorously scrutinize economic legislation passed under the auspices of

the police power.  There was a time when this Court presumed to make such binding judgments for society, under the guise of interpreting the Due Process Clause. [Courts] should not seek to reclaim that ground for judicial supremacy under the banner of the dormant Commerce Clause." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 347 (2007) (citing *Lochner*, 198 U.S. 45); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987) (In the context of a *Bruce Church* challenge to a state law: "The Constitution does not require the States to subscribe to any particular economic theory. We are not inclined to second-guess the empirical judgments of lawmakers concerning the utility of legislation." (quotation marks and citation omitted)).  That is why the Supreme Court speaks of "putative" local benefits in the *Bruce Church* context.

## I.   The District Court Rightly Dismissed Plaintiffs' Dormant Commerce Clause Claims.

Plaintiffs allege that the COPN laws exceed the Commonwealth's police power by impinging on regulatory turf delegated to Congress' exclusive purview, claiming that the COPN laws have the purpose and effect "of discriminating against out-of-state businesses in favor of in-state businesses" and further "place[s] substantial burdens on

26

interstate commerce . . . that are not justified by local benefits." (JA 44); (Doc. 40-1 at 65-66). The district court rightly held that the Complaint failed to state a plausible claim as a matter of law.

The "'negative implication'" of the Commerce Clause, that States may not "'erect barriers to interstate trade,'" *McBurney v. Young*, 667 F.3d 454, 468 (4th Cir. 2012) (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008) and *Dennis v. Higgins*, 498 U.S. 439, 446 (1991)), seeks to prevent "economic Balkanization," while allowing for "a degree of local autonomy." *Davis*, 553 U.S. at 338. It furthers these purposes by invalidating state laws that fall into two categories, the first being "state law[s] that discriminate[] facially, in [their] practical effect, or in [their] purpose against interstate commerce," by providing preferred treatment to in-state over out-of-state economic interests. Such favoritism is "virtually per se invalid." *McBurney*, 667 F.3d at 468 (internal quotation marks omitted); *see Oregon Waste Sys. v. Oregon Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994) ("'[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.").

Under second tier *Bruce Church* review, state laws that supposedly "'unjustifiably . . . burden the interstate flow of articles of commerce," *Brown*, 561 F.3d at 363 (quoting *Oregon Waste*, 511 U.S. at 98), are generally upheld "'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). That is:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Bruce Church*, 397 U.S. at 142 (internal citations and quotation marks omitted). "The dormant Commerce Clause walks a narrow path leading courts to 'rebuff[] attempts of states to advance their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state, while generally supporting their right to impose even burdensome regulations in the interest of local health and safety.' Thus, not all economic harms or anticompetitive choices are remedied through

28

the application of the dormant Commerce Clause, but rather only those that *unjustifiably burden* interstate commerce." *Brown*, 561 F.3d at 363 (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)). The COPN laws, being even-handed health regulations that have a legitimate, putative local benefit fall on the permitted side of that line.

**A.  Virginia's COPN laws do not discriminate against interstate commerce, as they are facially neutral, have a plain and legitimate public purpose, and have not been plausibly alleged to impose any burdens on out-of-state interests that they do not visit equally upon in-state interests.**

To state a first-tier claim, Plaintiffs would have to plausibly allege that the law discriminates in its purpose or effect as it plainly does not discriminate on its face against interstate commerce. In fact, the Plaintiffs concede that it is facially neutral. (Doc. 40-1 at 29, n.6, 36 n.3.) But having made this concession, Colon Health and Progressive Radiology have not plausibly alleged nonconclusory supporting facts that make it more than "conceivable," *see Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), that the legislature's purpose in enacting the law or the practical effect of these statutes is to place a discriminatory burden upon "'interstate commerce' or 'out-of-state economic interests,'"

*McBurney*, 667 F.3d at 469, rather than to reduce health care costs and to preserve access to medical services, the purpose that Virginia and other States that administer COPN laws assert.

It is a matter of common knowledge that certificate of need regimes of the type the State Health Officials administer generally are aimed at "preventing overinvestment in and maldistribution of health facilities."[5]  *Nat'l Gerimed'l Hosp. & Gerontology Ctr. v. Blue Cross of K.C.*, 452 U.S. 378, 383-84 & n.7 (1981); *see Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 923 (9th Cir. 2011) (citing cases).  Moreover, this court has routinely deferred to statements of legislative purpose when determining whether a law is facially discriminatory, *see Chambers Med'l Techns. v. Bryant*, 52 F.3d 1252, 1259 (4th Cir. 1995) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n.7, 471 n.15 (1981)), and such statements of purpose in Virginia's law refute any facial discrimination.  Va. Code Ann. § 32.1-102.2(A)(3); 12 Va. Admin. Code § 5-230-30(1) - (5).

Turning to practical effect, the Plaintiffs' complaint utterly fails to plausibly plead facts that could justify the conclusion that a facially

---

[5] *See Walgreen Co. v. Rullan*, 405 F.3d 50, 52 (1st Cir. 2005) (collecting commentary on the purposes of certificate of need programs).

neutral statutory regime somehow has the practical effect of imposing greater burdens on out-of-state economic interests than on in-state firms or interests. Plaintiffs do claim that established businesses often are the requesters of informal-fact finding conferences, which may delay or, should the evidence support it, block the granting of a certificate. (JA 34-35.) However, they also note that such conferences have also been sought when an in-state firm seeks a certificate to expand its service capacity. (JA 39.) The problem for Plaintiffs is that it is just as easy – and therefore just as likely – that an out-of-state interest has established a local presence as it is that an in-state interest is the established presence. *See Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36 (1980) (holding that a law is not facially discriminatory because it "visits its effects equally upon both interstate and local business"); *see, e.g.*, *Fresenius Med'l Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 943 (11th Cir. 2013) ("[B]ecause the law operates to burden in-state and out-of-state ESRD health care providers alike, Appellants fail to convince us that the Florida Act has the practical effect of discriminating against interstate commerce."); *Bryant*, 52 F.3d at 1258 (same).

Nor have Plaintiffs made any factual allegation supporting the conclusion that the real purpose of these statutes are other than what they claim to be. Simply rewording the conclusory assertion that the laws are protectionistic to say that they provide "a government-backed shield from competition" does nothing. (Doc. 40-1 at 45) (quoting JA 29). That the State Board promulgated by regulation the statement that one of the five "general principles [that] serve as the basis for the development of the review criteria and standards for specific medical care facilities and services" is to "discourage[] the proliferation of services that would undermine the ability of essential community providers to maintain their financial viability," 12 Va. Admin. Code § 5-230-30, does not in any way speak to a legislative intent to prevent interstate competition. To the extent competition is spoken of at all in the COPN laws, it is to be encouraged. *See* Va. Code Ann. §§ 32.1-102.2(A)(3) & -102.3(B)(4) (providing that, "[i]n determining whether a public need for a project has been demonstrated, the Commissioner shall consider . . . [t]he extent to which the proposed service or facility fosters institutional competition that benefits the area to be served

while improving access to essential health care services for all persons in the area to be served").

And finally, none of the factors that have at times been put forward as relevant to determining "whether a neutrally-worded state law has a discriminatory impact" apply. *See Locke v. Shore*, 634 F.3d 1185, 1193 (11th Cir. 2011) (citing the following factors: "whether the state law exclude[s] a class of predominantly out-of-state [residents] from a particular market[;] whether the state statute imposes costs on out-of-state residents that in-state residents do not have to bear[; and] whether the state legislature was motivated by protectionist purposes in passing the law at issue." (internal citations and quotation marks omitted)). This case is also distinguishable from the only Court of Appeals decision to hold that a certificate of need program violated the dormant Commerce Clause, *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005).

In *Rullan*, the First Circuit had before it a case where discriminatory effects were apparent and pervasive. The challenged law was Puerto Rico's application of a certificate of need requirement to pharmacies, from which were exempted all pharmacies in existence

prior to the date of enactment, nearly all of which were "locally-owned concerns." 405 F.3d at 53, 55. The result was that "ninety-four percent of pharmacies were locally owned." *Id.* Citing these facts, the Second Circuit concluded that the law "as enforced by the Secretary of Health" discriminated in effect against interstate commerce, and thus violated the dormant Commerce Clause. *Id.* at 57, 59, 60. However, the Second Circuit took pains to limit its holding, noting "[t]his is not to say that there are no instances in which a state could justify a certificate of need that restricts competition[;] however, certificate of need laws which deter competition *simply to benefit those entities already operating within a state* are not legitimate exercises of state power." *Id.* at 56 n.4 (internal citations omitted) (emphasis added).

Here, Plaintiffs have not alleged facts about the ownership of firms or that any of the enforcement facts that existed in Puerto Rico obtain in Virginia. Additionally, the Plaintiffs are not challenging a law that essentially imposes no restrictions on the operation of local medical services firms, and only limits the establishment of competing entities, as the law did in *Rullan*. Instead, they are challenging a law that broadly limits capital expenditures by nearly all medical firms for the

34

purpose of keeping down costs. Also, thirdly, unlike *Rullan*, Virginia's COPN law does not authorize just any economic competitor to obtain an informal fact-finding conference or otherwise participate in the administrative or appeals process, but only "any person showing good cause." Va. Code Ann. § 32.1-102.6(D) & (F). Good cause exists only where it is shown

> that (i) there is significant, relevant information not previously presented at and not available at the time of the public hearing, (ii) there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or (iii) there is a substantial material mistake of fact or law in the department staff's report on the application or in the report submitted by the regional health planning agency.

Va. Code Ann. § 32.1-102.6(G). Virginia's COPN law makes no provision for informing local entities, as there was in *Rullan*, but only general public notice and public comment. *Id.*, § 32.1-102.6(B). And Virginia law affirmatively prohibits ex parte contact between possible competitors and those in charge of determining whether a certificate should issue "[a]fter commencement of any public hearing and before a decision is made." *See id.*, § 32.1-102.6(C). Thus, to the extent they do burden interstate commerce, Virginia's COPN laws have not been

35

plausibly alleged to "deter competition simply to benefit those entities already operating within a state." *Id.* at 56 n.4.

**B.    The District Court rightly held that no plausible non-conclusory allegation had been pled that any burdens imposed on interstate commerce by Virginia's COPN law were clearly excessive in light of the putative local benefit of reduced medical costs.**

The lack of any discrimination, and the presence of an even-handed effect upon all businesses seeking to expand their service capacity through regulated capital expenditures in the Commonwealth, weighs in the *Bruce Church* analysis:

> [W]hen local economic interests are affected, 'nondiscriminatory measures …are generally upheld, in spite of [some burden] on interstate commerce, in part because the existence of major in-state interests adversely affected is a powerful safeguard against legislative abuse.' *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 200 (1994) (internal quotation marks and alterations in original omitted). In other words, burdened in-state interests can be relied upon to prevent or rectify legislative abuse . . . .

*Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 569 (4th Cir. 2005).

On a *Bruce Church* challenge, once a "legitimate local purpose [has been] found, . . . the question becomes one of degree." 397 U.S. at

36

142.  But Colon Health and Progressive Radiology alleged no facts, other than their own intentions, regarding foregone or diminished interstate commerce, leading the district court to put a very light weight on the interstate commerce burden side of the scale.

Because of this, the Plaintiffs now complain that the district court erred in considering only the burden upon their businesses, and not on interstate commerce generally.  But it is their complaint itself that failed to direct the district court to any particularized allegation of fact regarding the burden Virginia's COPN laws place on interstate commerce at large.  Instead, they simply restate naked conclusions that there is a burden.  (Doc. 40-1 at 38-41.)

Turning to the Plaintiffs' contention that the district court erred by not requiring a showing that Virginia's COPN laws achieve the intended local benefit, the Plaintiffs evince their misunderstanding of the nature of *Bruce Church* balancing.  (Doc. 40-1 at 26-28.)  In *Bruce Church*, the Court emphasized that the benefit to be weighed against the burdens on interstate commerce could be merely "putative," 397 U.S. at 142, that is, supposed, not proved.  *See* Merriam-Webster's Coll. Dictionary 948 (10th ed. 2001) (defining "putative" as "commonly

37

accepted or supposed" or "assumed to exist or to have existed" and noting that it derives from the Latin root "of *putare* to think"). The Court has not receded from this rule. *See Davis*, 553 U.S. at 338-39; *United Haulers*, 550 U.S. at 346; *see, e.g.*, *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 525 (1989) (rejecting the argument that the state had no legitimate interest in a particular law, identifying that interest, and then concluding that it is sufficient to survive *Bruce Church* scrutiny). That accounts for why "State laws frequently survive this *Pike* scrutiny." *Davis*, 553 U.S. at 339 (collecting cases); *see Yamaha*, 401 F.3d at 570 ("Only rarely have we doubted a statute's putative benefits . . . "); *see, e.g.*, *Brown*, 561 F.3d at 367 (concluding that any incidental burden from Maryland's regulation of morticians "would not be excessive in light of the putative benefits from the Act's regulation," that of "promoting familiarity between an owner and his business in a licensed and regulated industry").

To make it even clearer, the Court in *Bruce Church* said that "the extent of the burden that will be tolerated will of course depend *on the nature* of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Bruce*

*Church*, 397 U.S. at 142 (emphasis added).  In embracing "putative local benefits" whose "nature" must be considered against the relative burden on interstate commerce, the Court rejected the theory that it is for judges, in matters affecting interstate commerce, to reweigh the policy tradeoffs implicated by a particular measure to determine if there is just enough benefit to this or that interest to outweigh the burden.  *See CTS Corporation*, 481 U.S. at 92 ("We are not inclined to second-guess the empirical judgments of lawmakers concerning the utility of legislation.").  Even *Bruce Church*'s detractors on the Supreme Court do not suppose that this is what courts are permitted to do.  *See Davis*, 553 U.S. at 360 (Scalia, J., concurring in part) (describing the *Bruce Church* test as "on one end of the scale (the burden side) there rests a certain degree of suppression of interstate competition . . . ; and on the other (the benefits side) a certain degree of facilitation of [some public good].  Of course you cannot decide which interest 'outweighs' the other without deciding which interest *is more important to you*," a "quintessentially legislative judgment[]." (emphasis added)).

As this Court has recently explained:

> In determining whether a statute has "a legitimate local purpose" and "putative local

benefits," a court must proceed with deference to the state legislature. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987). Courts "are not inclined to second-guess the empirical judgments of lawmakers concerning the utility of legislation." *Id.* (internal quotation marks omitted). Thus, we consider whether the legislature had a rational basis for believing there was a legitimate purpose that would be advanced by the statute. *See id.* at 92-93. We likewise apply a deferential standard in identifying a statute's putative benefits.

*Yamaha*, 401 F.3d at 569. Whether true or not in some absolute, cosmic sense, a rational basis exists for believing that Virginia's COPN laws reduce the cost and increases the availability of medical services in Virginia.

This being so, the district court was plainly correct in concluding that Plaintiffs' theory of why they should prevail on a *Bruce Church* challenge necessarily failed. The Plaintiffs theory for why Virginia's COPN laws burden interstate commerce in a way that exceeds the "putative local benefit" is premised on their ability to (presumably) put on an economist who will testify that there are no "legitimate local benefits." (JA 44.); (Doc. 40-1 at 63-64). But courts simply are not in the business of deciding the extent of "putative local benefits," but instead where the question posed is essentially review for rationality.

40

*See Yamaha*, 401 F.3d at 569; *see, e.g.*, *Bryant*, 52 F.3d at 1261-62. This deference should be all the stronger where the courts are not considering areas within their common purview such as product safety, *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 529-30 (1959) (mudflaps), but instead what is the better school of political economy. *See CTS Corporation*, 481 U.S. at 92 ("The Constitution does not require the States to subscribe to any particular economic theory."). And, as the Court in *Bibb* noted, " [i]f there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective. Policy decisions are for the state legislature." 359 U.S. at 524. at 524; *accord Brown*, 561 F.3d at 367 (considering regulation of Maryland morticians and concluding that "[t]his is the type of legislative decisionmaking into which courts should avoid inserting themselves").

Close inspection of the allegations actually made on this point only bolster the district court's holding that no plausible claim had been presented. No specific allegations regarding the extent of any burden on interstate commerce are made, but the conclusion is simply asserted. For instance, Plaintiffs do not allege that there are many medical

providers located outside Virginia that would establish businesses therein or that there is a significant demand for medical equipment that is not being satisfied because of Virginia's COPN laws. The concrete information before the trial court was that a handful of applications for certificates were denied in the last year in which records were available, with no allegation that any of those were out-of-state businesses or were seeking to do business across state lines. *See* Va. Dep't of Health, 2011 Annual Report on the Status of Virginia's Medical Care Facilities Certificate of Public Need Program, at iii, http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD712012/$file/RD71.pdf (noting that the Commissioner granted 45 of the 53 applications for a certificate in the Commonwealth's Fiscal year 2011, approving total expenditures of over 730 million dollars, while denying proposed capital expenditures of approximately 44 million dollars); (Case No. 1:12-cv-00615, Doc. 15 at 1). And of course courts "cannot assume that [state regulators] would deny a permit [conditioned on the demonstration of a public need] on a basis that would violate the Commerce Clause." *Bryant*, 52 F.3d at 1262 n.15.

42

Neither *Yamaha* nor *Medigen* suggest a contrary conclusion.  In *Yamaha*, this Court had before it a statute and regulations that expressly required notice to all in-state dealers of the same "line-make" of motorcyles that an additional motorcycle dealer franchise was slated to be established anywhere in the Commonwealth and permitting "[*a*]*ny existing franchise dealer*" to protest the establishment, almost without regard to whether it sold motorcycles in the area in which the dealership was to be established.  401 F.3d at 563-64 (emphasis in original).  It was unquestioned that the purpose of this law was to provide economic protection for existing dealerships and franchisees.  *Id.* at 564.  The law operated so as to make "virtually certain" that protests from potential competitors would be filed, delaying the establishment and granting economic leverage to dealers as against manufacturers.  This would permit even "frivolous protests" by established dealers with little market share in the area to drag on for years.  *Id.* at 566.  The result was to discourage manufacturers, who were all located outside the Commonwealth, from opening dealerships in Virginia.  *Id.* at 566, 568, 573.

43

That the burdens were visited predominantly on out-of-state economic interests was significant to the *Yamaha* Court, *id.* at 569, 573, as was the fact that other statutes "provide[d] the same benefit" and that, even among "typical dealer protection statute[s]," the law in question had "no parallel in the law of any other state." *Id.* at 571 (quotation marks and citation omitted). Accordingly, this Court concluded that the putative local benefit, "that some number of existing dealers who are outside the relevant market area . . . but serve the geographic market area of a hypothetical prospect dealer in a not insignificant way, might receive some protection on their investment and advertising should the hypothetical dealer actually open" was too slight to justify "a substantial burden, a barrier to market entry, that is unparalleled in scope." This was particularly so because the state could have achieved any legitimate end "with a less restrictive alternative," such as a somewhat geographically limited scope of protest rights, that other states have. *Id.* at 573 (quotation marks and citation omitted).

This case is not *Yamaha*. Virginia's COPN laws' purpose is not the protection of established businesses and its effects have not even been alleged to be visited on predominantly out-of-state economic

44

interests. Because the end is controlling health care costs and access by reducing capital expenditures, it is not apparent how Virginia's even-handed COPN could not be designed to be less-restrictive on out-of-state interests that it already is. Furthermore, Plaintiffs have not offered any less-restrictive alternative that serves Virginia's end.

This case is also not *Medigen of Kentucky, Incorporated v. Public Service Commission of West Virginia*, 985 F.2d 164 (4th Cir. 1993). In *Medigen*, a "hauler of infectious medical waste" across state lines challenged a West Virginia statute requiring "prospective market participants to make a showing of public convenience and necessity" prior to collecting, hauling, and transporting infectious medical waste within West Virginia. *Id.* at 165. The regulation provided that if the state commission which administered the statute found "that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission *shall not grant such certificate.*" *Id.* at 166 (emphasis in original). However, "carriers holding certificates" to transport solid waste at the time the law was passed were permitted to obtain a certificate to transport "infectious medical

45

waste without making an additional showing of public convenience and necessity." *Id.* at 166 n.2.

Noting that this requirement "necessarily limits competition" and that it was conceded that it imposed "a significant burden on interstate commerce," the Court proceeded to the *Bruce Church* test and concluded that this restriction on market entry did not "promote[] local interests by insuring that service is available through West Virginia at reasonable prices." *Id.* at 167. The Court also rejected as "speculative" the commission's argument that the restriction was justified by the danger of monopolization, noting that nothing before the Court suggested that the danger was real. *Id.* The Court thus held that refusing certification for the sole reason "that the area [the applicant] seeks to serve already has reasonably efficient and adequate service" violated the Commerce Clause. *Id.*

Virginia's COPN laws do not direct the denial of entry whenever there's another medical service provider in the area and are not aimed at preventing the establishment of new businesses, but avoiding wasteful capital expenditure on medical facilities and equipment by all who compete in the Virginia market. Virginia's COPN laws do not raise

46

those kinds of protectionist concerns raised by the West Virginia law. Instead, *Medigen* actually endorsed the type of certificate of need program at issue here. Responding to the alleged danger of monopolization, the Court noted that "where competition has destructive effects, regulation may be justified. For example, competition may result in over-investment in local infrastructure that will drive up costs over the long run." *Id.* (citing *Panhandle E. Pipe Line Co. v. Mich. Pub. Serv. Comm'n*, 341 U.S. 329, 333-34 (1951)).

With regard to the Plaintiffs' argument that the amount of commerce a particular plaintiff is interested in engaging in does not control the merits of that plaintiff's *Bruce Church* challenge, nothing was pled with respect to what out-of-state persons are burdened by this law, how many there are, or what their burden may be. The Plaintiffs are seeking to challenge a facially neutral law without meaningfully alleging any facts about the "overall economic impact on interstate commerce." *Bruce Church, Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and cases applying them demand more.

## II. The District Court Rightly Dismissed Plaintiffs' Due Process And Equal Protection Claims Because the COPN Laws Are Reasonably Related to the Advancement of the

**Commonwealth's Interest in Reducing the Cost of Health Care in the Commonwealth and Ensuring Access.**

Claims that state economic legislation deprives a citizen of Due Process of Law, or fails to extend to a citizen the Equal Protection of the Laws, must be rejected "'unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.'" *Armour*, 132 S. Ct. at 2080 (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938)). And "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," *id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)), including bases that the government has not offered. "Thus, 'it is difficult to exaggerate the burden' that a party must overcome to demonstrate that economic legislation fails rational basis review." *Star Scientific, Inc. v. Beales*, 278 F.3d 339, 348-49 (4th Cir. 2002) (quoting *Holland v. Keenan Trucking Co.*, 102 F.3d 736, 740 (4th Cir. 1996)).

Not only has a rational basis for Virginia's COPN laws been offered by the State Board in this case, *see* 12 Va. Admin. Code § 5-230-30, the Plaintiffs' pleadings recognize that basis, as have many courts,

48

(JA 29) (noting that 36 states maintain COPN laws). *See Yakima Valley*, 654 F.3d at 923 (citing various cases and explaining that "[t]he concept of certificate of need regimes, which many states enforce, is to avoid private parties making socially inefficient investments in health-care resources they might make if left unregulated. A certificate of need program corrects the market by requiring preapproval for certain investments and, in theory, thereby ensures that providers will make only necessary investments in health care."). Nearly half of the States administered such programs prior to the creation of any federal inducement. *See id.* at 924 n.5.

As Colon Health and Progressive Radiology themselves recognize "[t]hese requirements [a]re premised on the purported ability to control healthcare costs by restricting supply and dividing the provision of healthcare services into discrete geographical regions." (JA 26, 29.) As was explained in the 2011 Annual Report of the Virginia Department of Health, Virginia's COPN program is "a regulatory program" that "seeks to contain health care costs while ensuring financial and geographic

49

access to quality health care for Virginia citizens at a reasonable cost."[6] (JA 133.)  The foregoing provides a rational basis for requiring that those who desire to make significant capital expenditures on facilities or equipment in Virginia first make a showing of public need.

As much as they may like, Colon Health and Progressive Radiology are not entitled to simply claim the opposite and obtain a full-dress trial, replete with expert testimony, charts, graphs, and the like.  (Doc. 40-1 at 61-62.)  To paraphrase the recent determination of the Eleventh Circuit in a similar case, "[u]nder the rational basis standard, the law requires only that [Virginia's requirement of a showing of public need] be rationally related to the [Virginia] Legislature's goal of . . . lowering health care costs, and improving [access to] health care services." *Fresenius*, 704 F.3d at 945.  "The Act will be upheld so long as there is any reasonably conceivable state of facts that could provide a rational basis for [the regulation]. . . . [T]he [COPN laws] pass[] rational basis-scrutiny because, no matter how ineffective the law might actually be, it was not irrational for the

_____

[6] Va. Dep't of Health, 2011 Annual Report on the Status of Virginia's Medical Care Facilities Certificate of Public Need Program, at 1, http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/RD712012/$file/RD71.pdf.

50

[Virginia] Legislature to conclude that the . . . law would accomplish the legislative objectives identified . . . ." *Id.* Thus, Virginia's COPN laws "survive[] rational basis scrutiny." *Id.*

## III. The District Court Rightly Dismissed Plaintiffs' Equal Protection Claim Relating to the Exemption of Nuclear Cardiac Imaging.

It is well-established that "a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose," and it is equally well-established that commercial rights are not fundamental. *Armour*, 132 S. Ct. at 2080 (quoting *Heller*, 509 U.S. at 319-320); *see Maryland Port Administration*, 492 F.3d at 283 (where a claimant "alleges no burden of any fundamental right, it must prove that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (quotation marks and citation omitted)). State law classifications, such as the exemption from COPN requirements for Nuclear Cardiac Imaging, Va. Code Ann. § 32.1-102.1, must be upheld "if 'there is a plausible policy reason for the classification, the legislative

51

facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Armour*, 132 S. Ct. at 2080 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)).

Furthermore, "a legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification.' *Heller*, 509 U.S. at 320; *Clover Leaf Creamery Co.*, 449 U.S. at 464 (noting that courts do not "'require a legislature to articulate its reasons for enacting a statute' and 'it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.'" (quoting *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980))).  Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Clover Leaf Creamery*, 449 U.S. at 464 (quoting *Vance*, 440 U.S. at 111); *see Heller*, 509 U.S. at 319 (noting a classification "must be upheld against equal protection challenge if there is any

52

reasonably conceivable state of facts that could provide a rational basis for the classification" because "rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."'  (quoting *Beach Communications*, 508 U.S. at 313)).

In sum, "[w]hen local economic regulation is challenged solely as violating the Equal Protection Clause, th[e] Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations," for "'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" *New Orleans v. Dukes*, 427 U.S. 297, 303, 305 (1976) (quoting *Williamson*, 348 U.S. at 489).

"[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 U.S. at 315.  "States are not required to convince the courts of the correctness of their legislative judgments." *Clover Leaf Creamery Co.*, 449 U.S. at 464.  And "[t]hese restraints on judicial review have added force "where the legislature

must necessarily engage in a process of line-drawing.'" *Id.* (quoting *Fritz*, 449 U.S. at 179).

Here the General Assembly reasonably believed that nuclear cardiac imaging, while perhaps technically similar to other forms of imaging, obviously fills a very different medical need than an MRI, and thus operates in a different market than someone seeking to provide MRI services. Distinguishing between markets in such a manner, and so exempting one type of medical equipment, is an integral part of the logic of certificate of need programs scheme, and is expressly contemplated as appropriate under the statute. *See* Va. Code Ann. § 32.1-102.2(A)(3). This is more than enough.

Courts simply are not the place for these judgments to be made, as the Supreme Court has made plain. *See Dukes*, 427 U.S. at 306 (overruling "the only case in the last half century to invalidate a wholly economic regulation solely on equal protection grounds"). For it is "'"[o]nly by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."'" *Beach Communications*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore*

54

*Auto Parts Co.*, 410 U.S. 356, 365 (1973) (quoting *Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 510 (1937))).

In sum, the Court should decline Colon Health and Progressive Radiology's invitation "to reclaim that ground for judicial supremacy under the banner of the dormant Commerce Clause," or any other. *United Haulers*, 550 U.S. at 347.

## CONCLUSION

For the reasons set forth above, the Judgment of the U.S. District Court for the Eastern District of Virginia should be **AFFIRMED**.

<div style="margin-left:40%">

Respectfully submitted,

**BILL HAZEL, *et al.***

*/s/  E. Duncan Getchell, Jr.*
Counsel for Appellees

</div>

KENNETH T. CUCCINELLI, II
Attorney General of Virginia

E. DUNCAN GETCHELL, JR.
(VSB #14156)
Solicitor General of Virginia
dgetchell@oag.state.va.us

MICHAEL H. BRADY
Assistant Solicitor General

April 1, 2013

PATRICIA L. WEST
Chief Deputy Attorney General

WESLEY G. RUSSELL, JR.
Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, VA 23219
Telephone:  (804) 786-7240
Facsimile:  (804) 371-0200
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This brief has been prepared using fourteen point, proportionally spaced, serif typeface:  Microsoft Word 2007, Century Schoolbook, 14 point.

2.    Exclusive of the table of contents, table of authorities and the certificate of service, this brief contains 10,796 words.


*/s/  E. Duncan Getchell, Jr.*
Counsel for Appellees

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, 2013, I electronically filed the foregoing Response Brief of Appellees upon the United States Court of Appeals for the Fourth Circuit via the Court's CM/ECF system, which will send notice of such filing to the counsel listed below:

Robert J. McNamara
William H. Mellor
Lawrence Salzman
Darpana M. Sheth
Institute For Justice
901 North Glebe Road
Suite 900
Arlington, Virginia 22203
(703) 682-9320
*Counsel for Appellants*

Timothy Sandefur
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
tsandefur@pacificlegal.org
*Counsel for Amicus Curiae Pacific Legal Foundation*

Lewis S. Wiener
David W. Arrojo Sutherland Asbill & Brennan LLP
700 Sixth Street, NW, Suite 700
Washington, D.C. 20001-3980
Telephone: (202) 383-0140
Facsimile: (202) 637-3593
*Counsel for Amicus Curiae Curvebeam, LLC*

I further certify that on the 2nd day of April, 2013, I caused the required number of bound copies of the Response Brief of the Appellees to be hand-delivered to the Clerk of Court.

*/s/ E. Duncan Getchell, Jr.*
Counsel for Appellees